Annie Rauh, Respondent, *v.* Deutscher Verein, Appellant.

| 29 | 483 |
|----|-----|
| 59 | 369 |

*Evidence — action to recover for personal injuries — what testimony by the plaintiff constitutes a waiver of her right to object to her attending physician testifying as to her condition.*

Where the plaintiff in an action brought to recover damages for personal injuries sustained by her testifies, on her direct examination, in regard to the accident, and as to the operations that were performed upon her at the hospital, to which she was taken after the accident, and as to her treatment by the physicians before and after the operation, and, on cross-examination, states the name of a physician who so attended her, it is competent for the defendant to call such physician and ask him, in reference to a diagnosis of the plaintiff's case, "What did you find?"

In such a case the testimony thus given by the plaintiff constitutes a waiver of her right to insist upon the incompetency, under section 834 of the Code of Civil Procedure, of the testimony of the physician.

Rumsey and McLaughlin, JJ., dissented.

Appeal by the defendant, Deutscher Verein, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of November, 1897, upon the verdict of a jury for $3,200, and also from an order entered in said clerk's office on the 22d day of November, 1897, denying the defendant's motion for a new trial made upon the minutes.

*Charles E. Hughes,* for the appellant.

*Frank Herwig,* for the respondent.

Ingraham, J. :

This action was brought to recover for injuries sustained by the plaintiff, by reason of the breaking of a step of the stairs leading from the first floor to the cellar in the defendant's clubhouse. The plaintiff testified to the accident and to the treatment by the physicians received at the hospital to which she was taken, and on cross-examination testified that a Dr. Tsitchlowitz was the physician to whom she referred. The defendant called Dr. Tsitchlowitz, who testified that he admitted the plaintiff as a patient of the hospital and examined and made a diagnosis of her case. He was then asked this question : "What did you find ?" This was objected to by counsel for the plaintiff under section 834 of the Code of Civil Procedure, and after some

discussion between counsel for the defendant and the court, the
court stated his ruling as follows : " The court holds that her con-
versation with the doctor, being brought out on cross-examination
of the defendant's counsel, and being questioned she was obliged to
answer, she herself had no privilege, does not open the door to
waive the privilege of her physician to refrain from disclosing what
he learned by private examination of his patient." To this defend-
ant excepted, and the counsel then stated to the court : " Your rul-
ing is that I cannot go into any examination as to her condition
during the time that he treated her in the hospital ? " The court :
" My ruling is that you are not entitled to obtain from this witness
a disclosure of what he ascertained by an examination of this woman
while she was his patient." To this defendant excepted. Counsel
for the defendant then made this statement : " Then, of course, that
limits my inquiry very materially." The serious question presented
is as to the correctness of this ruling. It will be noticed that the final
ruling of the court as to the admissibility of the doctor's testimony
was not that the witness was prevented from testifying as to the
truth of any facts which were elicited from the plaintiff on cross-
examination, but that the defendant was not entitled to obtain from
the witness a disclosure of what he had ascertained on the examina-
tion of the woman while she was his patient. The plaintiff, upon
her direct examination, had testified that on the 2d day of Decem-
ber, 1893, which was about six weeks after the accident, the acci-
dent having happened upon the 17th day of October, 1893, she
was admitted to the German Hospital. She then testified : " I was
entered at the German Hospital as a patient, and plaster of paris
was put on my foot. The plaster of paris was put on my right
leg, the leg that was injured. That plaster of paris remained on
five weeks. On December 8th, I was sent to the Isabella Home.
.* * * I stayed at the Isabella Home five weeks, and was then
sent back to the German Hospital, where I was operated on. The
plaster of paris was removed from my right leg when I came to the
German Hospital the second time. * * * When they removed
the plaster of paris at the German Hospital they operated on me.
They removed some particles of bone ; my leg was cut ; I saw where
it was cut. * * * After that it was bandaged. Every other
day the bandages were removed and fresh ones put on. * * * I

remained at the German Hospital, after being brought there from the Isabella Home, about a year and a half altogether. During that time I was operated on six times. At each of these operations they removed pieces of bone from my leg. After each operation I noticed that my limb had been cut at the ankle. * * * After every operation I was in bed about four weeks. During the intervals between the operations I was in bed or sitting up and moving around. I moved around with the aid of crutches; I used these constantly under the advice of the physicians in the German Hospital. * * * During the year and a half I was at the German Hospital my limb was bandaged during the entire time. * * * During that time I applied bandages twice a week. I applied carbolic salve under the advice of a physician at the German Hospital." She further testified on cross-examination that when these six operations were performed, she knew these bones were removed because " I heard the doctor say that pieces of bone were taken out. I did not know it of my own accord. I heard the doctor say a piece of bone was taken out. * * * Operations were performed on my foot; the first operation on the 9th of February, 1894. There were bones taken out at the last two operations. The only way I know pieces of bone were taken out was when I heard the doctor say so. I don't know anything about it myself. * * * " It thus appears that, on the direct examination, the plaintiff testifies as to the operations that were performed upon her at the German Hospital, and as to the treatment she received there and as to what the doctors told her as to what happened at the operations, and the serious question presented is, whether this testimony of the plaintiff waived the privilege given by section 834 of the Code, and permitted the defendant to call the physician who performed the operation at the German Hospital to testify exactly to as the truth of the plaintiff's statement and as to the treatment she received and the operations performed and as to the advice given to her by the operating physician.

The ruling of the court was not confined to a direct answer to the question asked and objected to, but the ruling was that the defendant was not entitled to interrogate the witness as to what he had ascertained upon examining the woman while she was

his patient. And this ruling would exclude all testimony of the doctors as to the woman's condition ; as to the treatment she received ; as to the operations performed by them ; as to whether or not pieces of bones were only taken from her ankle during the operation, and as to the advice the physician gave her as to her future treatment. The physician could not contradict the plaintiff's statements without testifying as to the information he had acquired while attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity. The testimony of the physician would clearly be incompetent under section 834 of the Code, unless the testimony given by the plaintiff as to what took place at the hospital and in relation to the treatment that she received was a waiver of this privilege. By section 836 of the Code it is provided : " That the last three sections (including section 834 now under consideration) apply to any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by the person confessing, the patient or the client."

What will constitute a waiver of this privilege given to the patient is not prescribed, and must be determined as a question of fact in each particular case from the acts of the plaintiff during the conduct of the trial. After considerable conflict as to the effect of a waiver when once made, it seems to have been settled by the Court of Appeals, in the case of *Morris* v. *New York, Ontario & W. Ry. Co.* (148 N. Y. 92), that a waiver once made is general and not special, and its effect cannot be limited to a particular purpose or person. The court, in disposing of that question, says : " In this case it was the privilege of the plaintiff to insist that both physicians should remain silent as to all information they obtained at the consultation, but she waived this privilege when she called Dr. Payne as a witness and required him to disclose it. The plaintiff could not sever her privilege and waive it in part and retain it in part. If she waived it at all it then ceased to exist, not partially, but entirely. The testimony of Dr. Payne having been given in her behalf, every reason for excluding that of his associate ceased. The whole question turns upon the legal consequences of the plaintiff's act in calling one of the physicians as a witness. She then completely uncovered and made public what before was private and confidential. It amounted

to a consent on her part that all who were present at the interview might speak freely as to what took place. The seal of confidence was removed entirely, not merely broken into two parts, and one part removed and the other retained." And after citing the case of *McKinney* v. *Grand St., etc., R. R. Co.* (104 N. Y. 352), the court concludes : " The reasoning of Chief Justice RUGER, in support of these propositions in that case, is applicable here. It furnishes a safe basis for holding that when a waiver is once made it is general and not special, and its effect cannot properly be limited to a particular purpose or a particular person. After the information has once been made public no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect, by its repetition at another time or by another person." Did the plaintiff, by her testimony detailing the operations that were performed upon her at the hospital by the physicians ; the treatment she then received ; the statement of the physician as to the fact of the operation and as to the advice he gave to the patient, operate as a waiver of her privilege to exclude the testimony of the physician who performed the operation and who gave the advice ? The waiver of the privilege cannot be limited to a particular purpose or a particular person, and if the plaintiff, by so testifying on her direct examination, waived this privilege, then it was competent for the physician to testify. We think it clear upon principle and authority that she did. She testified generally as to what happened at the hospital ; as to what the physicians did in operating upon her ; as to their treatment before and after the operation. By this testimony she detailed the occurrences that happened at the hospital during the time of the examination by the physicians during the time the operations were performed, and during the subsequent treatment of the physicians.

We must adopt one of two principles in cases of this character : Either to allow the plaintiff to testify as to the operations that were performed, and as to what happened at the hospital while she was under treatment, and not allow testimony to contradict her statements, or else we must hold that by such testimony she waived the privilege that entitled her to object to the testimony of the only person who could contradict her, giving an account of what actually happened, and contradicting her testimony. If these physicians

who attended her at the hospital cannot testify as to what happened at the hospital, as to the operations performed and the treatment prescribed, it is clear that there is no one else who can. The condition would be that the plaintiff could testify to what she pleased as to the treatment she received without danger of contradiction. If this contention of the plaintiff is sustained, the plaintiff was entirely safe in testifying to anything that it pleased her to say as to what happened to her, or was done to her, at the hospital, for the mouth of the only witness that could contradict her is silenced by this section of the Code cited. The reasoning of the Court of Appeals in the case of *Morris* v. *N. Y., Ontario & W. Ry. Co.* (*supra*) applies with full force to this contention : " If this is not so, the statute would seem to be a serious obstacle in such cases to the attainment of truth and justice. The proposition that a patient who has retained or employed two or more professional men, under such circumstances that none of them are permitted to disclose the information thus obtained, except with his consent, can call one of them as a witness to disclose what took place when all were present, and at the same time enjoin silence on all the rest, appears to be so unfair and unreasonable that it challenges investigation before accepting it as a rule of law." And it would appear to be equally unfair and unreasonable to allow a plaintiff, the one most interested in the recovery, to testify to what took place at the time of the examination by the physicians, or of the operations that were performed or the treatment received, and at the same time enjoin silence upon the physician. A physician, when called, may be said to be, under ordinary circumstances, a disinterested witness. His professional position and his reputation would of themselves be a pledge for his not intentionally violating his oath, and generally he would have no great object in making a false statement as to the result of his investigations, while his professional knowledge would enable him to state correctly the result of his investigations and the treatment he prescribed or the operations he performed. In the case, however, of a plaintiff, irrespective of the interest that he would have in coloring the testimony to suit his case, his lack of professional knowledge would expose him to mistakes in testifying, and would make it quite possible, with the utmost good faith on the part of the party testifying, that the testimony would be grossly

misleading. It must be apparent that such a rule would work the greatest injustice, and would expose the defendant to danger on account of the fact that the rule would prevent him from examining into the truth of the plaintiff's statements. The question was presented at the late General Term in this department in the case of *Marx* v. *Manhattan Ry. Co.* (56 Hun, 575), and it seems to me that the opinion of the presiding justice is a most satisfactory solution of the question. The conclusion there stated by him seems to me to be unassailable. As therein said : " It seems to us clear that, having thus himself gone into the privileged domain to get evidence upon his own behalf he cannot prevent the defendant from assailing such evidence by the only testimony available for that purpose." In commenting upon this case Judge O'Brien, in the case of *Morris* v. *N. Y., Ontario & W. Ry. Co.*, says : " The other (*Marx* v. *Manhattan Ry. Co.*) may also be open to some doubt, and both are cited, not as controlling authority, but in order to show the views that very able jurists have entertained with respect to the construction of the statute." This remark does not appear to have been made for the purpose of disapproving or overruling the case, but simply to avoid the conclusion that the citation of the case would be considered as an approval of it. And upon consideration it seems to me that, applying the principle established in the case of *Morris* v. *N. Y., Ontario & W. Ry. Co.*, it necessarily follows that the testimony of a party as to the result of the physician's examination is as effectual as a waiver as the examination of one physician who was present. Applying, therefore, the rule of the *Morris* case, that if the privilege is once waived by the patient, the waiver extends to the whole professional conduct of the physician, it must follow that the plaintiff, having submitted evidence, whether it be the testimony of the plaintiff herself or of another witness present, of the transaction between the patient and the physician took place, waived the privilege, and the truth of what happened and what was ascertained by the physician in his examination and the treatment of the patient can be testified to by the physician.

It is not necessary for us to determine whether or not the defendant, by calling from the plaintiff on cross-examination the details of the transaction, would then be allowed to contradict such details by an examination of the physician. It might well be that the defendant, having made the plaintiff his witness for that purpose, would

not, under the ordinary rules applicable to the examination of witnesses, be allowed to contradict his testimony; or even if this rule did not apply it might well be that the plaintiff did not waive the privilege in answering the defendant's questions on cross-examination. But in this case the important facts were the treatment of the plaintiff at the hospital, and the operations performed upon her there, or the advice given to her. On direct examination she had testified as to what the doctors had done to her while under treatment at the hospital, and of what they had said to her there, and her cross-examination was only as to what she had testified to on her direct examination, the only new fact elicited being the name of the physician to whom she referred as the physician who had operated upon her. We think this testimony on the part of the plaintiff in naming the physician was a waiver of her privilege to exclude the testimony of the operating physician; and the mere fact that she named him on cross examination would not have the effect of retracting that waiver which had been already effectuated. The physician would certainly be allowed to contradict the fact testified to by plaintiff. It seems to me that to allow a party to an action to testify as to the treatment she had received from the physician, and the operations he had performed upon her, and then hold that the physician was not to be allowed to testify as to the truth of her statements, would be to place the defendant in an action of this character entirely at the mercy of the person making the claim against him.

We think, therefore, that it was error to exclude the testimony of this physician as to the condition of the plaintiff when she came to the hospital, and as to the operations he performed upon her and the result of these operations. Without passing upon the other questions presented, we think the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred; RUMSEY and McLAUGHLIN, JJ., dissented.

BARRETT, J. (concurring):

I agree with Mr. Justice INGRAHAM that it was error to entirely exclude the testimony of Dr. Tsitchlowitz. I can see no reason why the plaintiff may not waive her privilege effectually by herself tes-

tifying to the information which she gave to her physician, to the details of the physical examination made by that physician, and to the treatment which followed. What the statute seeks to preserve is the privacy of the person with reference to those physical conditions ascertainable only by a physician in the course of his employment, whether by personal examination or by confidential information given by the patient. The patient can most effectually, by his own testimony, draw aside the veil, and when he had done so there is no valid reason why the physician's mouth should be closed. The unfairness of any other rule, and the undesirable results sure to follow from it, are well set forth by Mr. Justice INGRAHAM. It cannot be that a patient may testify to all the details of her physician's examination and treatment substantially without danger of contradiction.

I do not think that the court meant to intimate anything to the contrary in the *Morris Case* (148 N. Y. 88). Opinion was there reserved as to the *Marx Case* (56 Hun, 575), and the *Treanor Case* (28 Abb. N. C. 47) was disapproved. The latter case was an extreme one. The plaintiff was struck by a bottle falling from the defendant's structure. She described the effect of the blow upon her; that she had a numb feeling in the head, accompanied with a discharge from the ear, sickness of the stomach, etc. This description of her condition and suffering, apart from any disclosure to a physician and disconnected with any treatment, did not effect a waiver. She said nothing, so far as we can see from the report, with reference to her condition when actually under the doctor's care, but simply stated that "a certain doctor attended her, and had applied ice to her head to keep down the swelling." This surely was not sufficient to open the door to her entire case. The doctor might well have been permitted to testify that he had or had not applied ice to her head, and that there was or was not a swelling there. He might even have been permitted to testify to the actual facts as they were presented to him at that particular time. But there his testimony should have stopped. A single detail of this description was insufficient to effect a general waiver. Here, however, the plaintiff went over the whole ground of her treatment in the hospital, and minutely detailed the precise condition of her leg, and what the physicians did with regard to it.

The objection that Dr. Tsitchlowitz does not appear to have taken part in any of the operations upon the plaintiff seems unsubstantial. He did examine her; and the plaintiff's testimony was by no means confined to the result of the operations. She stated fully and in detail the condition of her leg during the whole time she was at the hospital, both before and after the operations.

I also think that the judgment should be reversed upon the facts. The plaintiff's theory is, that the step was cracked at the time of the accident, and had been improperly repaired. She distinctly testifies, however, that it did not break till she stepped upon it. She says, "When I stepped on it it was not already broken. It broke when I stepped on it." She also says that she did not know the step was out of order before the accident; that she never complained of it herself, and that she never heard that any one else ever did. In addition to this testimony we have that of three other employees of the defendant who had occasion to use the step constantly. They all testify that it was not broken prior to the accident. One of these witnesses, and seemingly two, were not in the defendant's employ at the time of the trial; and it is quite evident that they had no interest in stating anything but the truth. It is true that one of the witnesses, McKenzie, had been in the defendant's employ only about two weeks at the time of the accident; but during this period he had occasion to use the stairs "about twenty-five times a day." The precise time that the other two witnesses had been with the defendant does not appear. They used the stairs three or four times a day, or more. There is also the evidence of a fourth employee (who went into the defendant's employ shortly before the accident, and left it before the trial) that he helped to mend the break, and that it looked like a new one. It was further proved conclusively by the plaintiff and others that no complaint was ever made to the defendant regarding the state of the stairs.

Against all this evidence is that of the witness Strohlein, who says he passed over the stairs three times prior to the accident. He says that one of the steps, which he cannot locate exactly, was cracked, and had been braced up by a piece of iron resting upon the step next below. It is most improbable that the casual examination of this witness should have disclosed to him something which had escaped the attention of those who used the stairs constantly. His

testimony has no support whatever, except in the plaintiff's statement that the step was braced from below. But she distinctly states that it was not cracked; and it is most improbable that a brace would have been placed under an apparently sound step.

The argument that more of the employees who were with the defendant at the time of the accident might have been called as witnesses, applies just as strongly to the plaintiff as to the defendant. If these old employees could have been reached, and their testimony if reached would have been favorable to the plaintiff, it is certainly strange that she rested her case upon Strohlein's testimony.

It cannot be said that the plaintiff proved by a fair preponderance of evidence that the step was cracked prior to the accident; and there is no pretense that the defendant had any means of knowing that the step was defective, except from the presence of the crack. For these reasons, as well as those assigned by Justice Ingraham, the judgment should be reversed.

Ingraham, J., concurred.

McLaughlin, J. (dissenting):

The plaintiff instituted this action to recover damages for personal injuries alleged to have been sustained by her through the defendant's negligence on the 17th day of October, 1893. She was at the time an employee of the defendant, and her duties required her to use a flight of iron stairs which led from the pantry in the defendant's club house to the basement below. On the day in question, in passing down the stairs, one of the steps, by reason of a crack or break therein, gave way and her right ankle was seriously injured. She had a verdict of $3,200, and from the judgment entered thereon and the order denying a motion for a new trial the defendant appealed, and it now insists that the judgment should be reversed (1) because it is contrary to the evidence; (2) because the damages are excessive, and (3) because the trial court erred in excluding certain testimony.

Upon the trial it was, in effect, conceded, at least it was not seriously disputed, that the plaintiff, on the 17th of October, 1893, fell upon the stairs referred to and sustained a serious injury. The real contest was whether the defendant was responsible for the injuries sustained; that is, whether the step was defective at the time the

plaintiff fell, and, if so, whether such defect could have been discovered by the exercise of reasonable care on the part of the defendant. Keeping the real contest. in mind a brief reference to the testimony offered will demonstrate that the question presented was one properly for the jury, and that their verdict was justified by the evidence. The plaintiff's witness, Strohlein, testified that in August, immediately preceding the day of the accident, one of the steps in the stairs — the third, fourth or fifth one from the top — (and the plaintiff claimed to have fallen on the fourth or fifth one) " was cracked across the full width of the stair," and was braced up from underneath with a piece of iron. He also testified that he observed the same condition in the stair on two occasions thereafter, one of them in September and the other in October, only a few days before the plaintiff was injured. The plaintiff testified that after her foot went through the defective step she observed a piece of iron about three inches long on the step immediately below the one which was broken; that " it was on the step below, underneath the crack." Two other witnesses were produced, who testified without objection that an iron step, cracked in the middle and in the manner testified to by Strohlein, could not be properly repaired by bracing it from underneath; that the only way in which such a defect could be remedied was by removing the broken step and substituting a new one in its place. The testimony offered by the witnesses referred to, bearing upon the previous condition of the step and the repairs made to it, was substantially uncontradicted by the defendant. It is true that the defendant, out of some thirty odd servants then in its employ, who it alleged were in the habit of constantly using the stairs in question, produced four witnesses, McKenzie, Keech, Perriot and Perriot's wife. McKenzie testified that he heard of the accident, and on the same day examined the step and found it broken, and in such a way as to leave an opening in the break of an inch and one-half, and that none of the steps were broken before this, to his knowledge. He did not enter the employment of the defendant until the second of October, and there is nothing to indicate that thereafter his attention, prior to the accident, was directed to the stairs, or that he ever made any inspection of them whatever. Defendant's witness Keech corroborated McKenzie, but it is to be noticed in connection with his testimony that he

did not go to the defendant's club house or commence to work therein until the nineteenth or twentieth of October, which was two or three days after the accident is alleged to have taken place. The witness Perriot testified that he never saw "anything particular in that stairs that required repair," but he did not deny that there was a broken step in the stairs prior to October 17, 1893, nor that he had knowledge of such defect. The only other witness produced by the defendant was the wife of the witness last referred to, who testified that she used the stairs frequently between the first of October and the first of November, and she "never saw that the step was broken;" but in connection with her testimony it must be remembered that the defendant conceded that the step was actually broken during the month of October, and was repaired by defendant's witnesses McKenzie and Keech.

I have thus referred at some length to the evidence bearing upon the defective condition of the step prior to the accident, for the reason that it was strenuously urged upon the oral argument, and the same position is taken in the brief submitted, that the verdict was against the weight of evidence in this respect. It is not against the weight of evidence, but in accordance with it. The judgment cannot be disturbed on this ground. The damages awarded cannot be said, under the facts disclosed, to be excessive. If the plaintiff was injured to the extent claimed by her, and it was for the jury to say, then the amount awarded was none too high. This brings us to the consideration of the remaining question, which is the only difficult one presented, and that is, whether the court erred in sustaining the plaintiff's objection to the admission of certain evidence.

Upon the trial plaintiff testified that on the second of December following her injury, she went to the German Hospital for treatment, and there remained until the ninth of the same month, when she was sent to the Isabella Home, and that after remaining there some five weeks she returned to the former institution, where she remained about a year and a half, and that during that time six operations were performed upon her ankle and pieces of bone were at each operation removed. Upon cross-examination she stated that when she went to the German Hospital, Dr. Camerer treated her, and also Dr. Tsitchlowitz. She also stated that, when the operations referred to on her direct examination were performed, she was under the

influence of ether, but knew that pieces of bone were removed, because she was so informed by *the* doctor.

Dr. Tsitchlowitz was thereafter called by the defendant, and after he had testified that on the 2d of December, 1893, he admitted the plaintiff as a patient to the German Hospital, examined her and made a diagnosis of her case, he was asked this question : " What did you find ? " The plaintiff objected upon the ground that the answer was not admissible under section 834 of the Code of Civil Procedure, and after some discussion between the court and counsel, the objection was sustained and exception taken by the defendant, the court stating the reason for the ruling as follows : " My ruling is that you are not entitled to obtain from this witness a disclosure of what he ascertained by an examination of this woman while she was his patient." It is claimed that the exclusion of this testimony was error, and that the exception taken thereto requires a reversal of the judgment.

I cannot agree to that conclusion. The plain and positive require-ments of sections 834 and 826 of the Code of Civil Procedure not only justified but required the trial court to make just the ruling which it did. The information sought to be obtained from the doc-tor by the question asked was not admissible. Section 834 of the Code, above referred to, provides that "A person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a profes-sional capacity, and which was necessary to enable him to act in that capacity ; " while section 836 provides that section 834 applies to " any examination of a person as a witness unless the provisions thereof are expressly waived upon the trial or examination by" the patient. The relation of physician and patient is conceded to have existed, and the information sought is also conceded to have been derived by the physician from an examination made by him by reason of that relation. The question called for the information derived by the doctor from *the examination* made by him of the patient when she applied on the 2d day of December, 1893, for admission to the hospital. The ruling of the court simply went to the extent of prohibiting him from making known the information thus ascertained. The learned trial justice was guarded in his ruling, and while counsel sought to get from him a general ruling, he

responded by saying : " My ruling is that you are not entitled to obtain from this witness a disclosure of what he ascertained by *an examination* of this woman while she was his patient."

But it is claimed that this ruling in effect prohibited the defendant from questioning the doctor as to anything that took place while the plaintiff was under his care. Assuming that the ruling went to that extent, I am also of the opinion that no error was committed. It is conceded that the testimony of the doctor was incompetent under section 834 of the Code, unless the privilege accorded by the statute was waived by the plaintiff. But it is claimed she waived this privilege. How? By her giving testimony " detailing the operations that were performed upon her at the hospital by the physicians, and the treatment she then received ; the statement of the physician as to the fact of the operation, and as to the advice he gave to the patient." This, it is said, operated " as a waiver of her privilege to exclude the testimony of the physician who performed the operation and who gave the advice." Just how this is applicable to the question under review, I am unable to see. The question here is whether Dr. Tsitchlowitz could give the information derived by him from an examination of the plaintiff on the second of December, and long before any operation was performed. But, as hereinbefore said, if it could be conceived that the ruling made upon this question was broad enough to exclude all of the information derived by Dr. Tsitchlowitz while plaintiff remained in the German Hospital, it would not help the appellant. There is nothing to show that Dr. Tsitchlowitz ever performed, assisted or took part in any operation that was ever performed upon the plaintiff. The only fair inference that can be drawn from the evidence is that Dr. Camerer performed the operations. The plaintiff, as we have already seen, testified that the only way she knew bones were removed was what *the* doctor told her, and it is fair to infer from this that the doctor she referred to was the one who performed the operation. But this was not Dr. Tsitchlowitz. She testified : " It was Dr. Camerer that I heard say that bones came out of my foot. Dr. Tsitchlowitz never told me that. That was told me in the German Hospital." Upon her cross-examination it is true she said that Dr. Tsitchlowitz did not tell her that there was anything else the matter " besides

sprain," but that testimony was not volunteered by her and did not, of itself, involve anything that the doctor did tell her; so that, for the purposes of the examination of this case, it need not be considered, and it is practically conceded that none of her evidence operated to waive her privilege as to the advice of a physician, unless it was what she said upon her direct examination. That evidence was only what was done in the German Hospital. In the nature of things, it could not have been a private examination, and it did not involve any information whatever obtained by a physician. At the time of the operation attendants must necessarily have been present, and the operation itself did not constitute information which the physician acquired, but was the result of the information previously acquired, by reason of which he was able to make up his mind that an operation was necessary. That there was such previous examination is fairly to be inferred from the fact that the operation took place; but the plaintiff gave no testimony as to that examination, or that there was an examination, or that the doctor gave her any information about it. Every fact that she testified to might have been testified to by any attendant who was present at the operation, and certainly, if testified to by an attendant, it would not have opened the door for the testimony of a physician as to what he discovered at an examination made at another time. The whole burden of the testimony of this witness was to give the consequences which she observed of the injury which she received.

Can it be said, while the statute above referred to remains in force, that if a person sustains an injury and thereafter brings an action to recover damages therefor, because he testifies in his own behalf to the injuries sustained and that he was treated by a physician who gave him medicine and who performed an operation, he thereby waives the privilege accorded by the statute? I think not. Such a conclusion seems to me absurd. It is true a waiver may be inferred from circumstances, but there must be something present from which it can be at least inferred that the party waiving does so willingly, voluntarily, purposely and intentionally. This, as I understand the authorities, has been the view heretofore entertained by the courts when similar questions have been presented for consideration. Thus, in *Hope* v. *Troy & Lansingburgh Railroad Company* (40 Hun, 438), where an action was brought to recover damages for injuries

on account of the negligence of the defendant, and the plaintiff had been treated by three physicians, each one at a different time from the other; one of the physicians was called as a witness for the plaintiff and gave testimony as to the extent and character of the injuries. The defendant then called the other two. Plaintiff objected to their testimony, the objection was sustained, and the court on appeal held: "The Code and the authorities justify the ruling." This case was affirmed by the Court of Appeals in 110 New York, 643. And in *Record* v. *The Village of Saratoga Springs* (46 Hun, 448; affd. in Court of Appeals, 120 N. Y. 646), the plaintiff had two physicians who upon one occasion visited and had a consultation over her together. Upon the trial plaintiff called one of them and he testified as to her condition at that time. The defendant then called the other and sought to examine him on the same subject, but upon objection his testimony was excluded upon the ground that the plaintiff did not waive her privilege to insist upon that physician keeping silent by calling the other one.

The case of *McKinney* v. *Grand St., etc., R. R. Co.* (104 N. Y. 352) is not in point. All that that case holds is that where a plaintiff calls a physician as a witness in her behalf upon a trial and he testifies fully as to her physical condition learned by him while attending her, upon a subsequent trial involving the same subject-matter, the defendant can call the same witness if plaintiff does not; or, in other words, that the statutory prohibition against a disclosure by a physician of information acquired by him while attending a patient can be waived by the patient, and when once waived cannot thereafter be recalled. Neither do I think the case of *Marx* v. *Manhattan Ry. Company* (56 Hun, 575) is an authority upon the question here presented. In that case the plaintiff in his own behalf testified that he had visited a Dr. Knapp two or three times to consult him about his eye; that Dr. Knapp did not examine him; that he simply looked at his eye, but asked him no questions and told him nothing, and that on the third visit he told the plaintiff to get examined by a doctor. Dr. Knapp was then called as a witness by defendant for the purpose of showing that the plaintiff did not truthfully state what took place; and the court held that the testimony was admissible because it "related to the same interview as to which the plaintiff had testified, and to the occurrence of which he had pretended

to give an account," and that the plaintiff by his testimony waived his privilege and could not prevent an inquiry of the doctor upon the same subject. Nor does the case of *Morris* v. *N. Y., Ontario & W. Ry. Company* (148 N. Y. 88) sustain the appellant's contention. All that the court there held was that when a party had been examined by two physicians acting together, both of them holding the same professional relation towards him, and he called one of them as a witness in his own behalf, in an action in which his condition, as it appeared at such consultation, was the important question, to prove what took place at the consultation and what the witness then learned, the party thereby waived the privilege conferred by the statute to object to the testimony of the other physician. And the reason for the rule as there stated is that after information acquired by a physician " has once been made public no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect by its repetition at another time or by another person;" that the act in calling one of the physicians as a witness amounted to a consent on the part of the patient that the other might speak freely as to what took place.

This case is precisely like that of *Treanor* v. *Manhattan Ry. Co.* (28 Abb. N. C. 47; 16 N. Y. Supp. 536). In that case it was held that when a witness disclosed upon the stand her physical condition, which was the result of the injury sustained, she thereby opened the door to the testimony of a physician who had attended her after that injury. In that case as in this there was no attempt on the part of the plaintiff to tell what the doctor had said as the result of an examination. The plaintiff confined herself there, as the plaintiff did here, to what took place and what she observed as the result of the injury which she received. The Court of Common Pleas held in that case that the plaintiff by giving that testimony waived her right to object to the testimony of the physician; but the law as laid down in that case was unanimously and promptly disapproved by the Court of Appeals in the case of *Morris* v. *N. Y., Ontario & W. Railway Co.* (148 N. Y. 88, 93).

It follows that the plaintiff did not waive her right to insist that the information derived by Dr. Tsitchlowitz while she was his patient should be treated as confidential by him. She has not consented, and there is nothing from which a consent can be inferred, that the

doctor should make known the information thus ascertained by him, and he should not be permitted to do so without her consent. The statute so provides, and it is the duty of the court to give effect to its plain and manifest meaning. If it be said that this may result in a hardship to the defendant, or that such a construction may at times work injustice, that is an argument which might be properly addressed to the Legislature, but not to the court. Courts do not make statutes ; they simply construe and give effect to them when made.

For these reasons I cannot concur in the opinion of Mr. Justice INGRAHAM for the reversal of this judgment.

RUMSEY, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.