(30 Misc. Rep. 703.)

HENNESSY v. KELLEY.

(Oneida County Court. March, 1900.)

PHYSICIANS—SURGEONS—EVIDENCE—PRIVILEGE—WAIVER.

Where defendant in a suit for medical services counterclaimed that he had suffered damages by plaintiff's unskillful treatment, and called two surgeons, who testified that he had been suffering from a disease other than that for which plaintiff had treated him, and defendant and his wife also gave evidence as to his symptoms and plaintiff's treatment, and claimed that they had notified her of the symptoms tending to show the existence of his disease, plaintiff was entitled to show by physicians called by her in consultation that defendant failed to disclose the symptoms to one of them, and admitted to the other, discovering the disease, that he had not given plaintiff certain information given to him, since having testified to his treatment and malady, and given evidence as to what occurred during plaintiff's treatment, defendant waived his privilege under Code Civ. Proc. §§ 834, 836, prohibiting a physician to testify to information necessarily disclosed to him in attending a patient in a professional capacity, except on the patient's waiver of secrecy in open court.

Action for medical services by Margaret E. Hennessy against Patrick L. Kelley. Judgment for plaintiff. Motion by defendant for a new trial on the minutes denied.

H. F. Coupe, for the motion.
E. J. Wager, opposed.

DUNMORE, J. Plaintiff is a physician residing and practicing at Utica, N. Y., and this action was brought to recover for plaintiff's services in attending defendant professionally. Defendant alleged that plaintiff, through lack of skill, failed to diagnose his case correctly, and treated him for a disease from which he was not suffering, and failed to treat him for the disease with which he was at that time afflicted, and further alleged that, by reason of plaintiff's unskillful, negligent, and careless treatment of the defendant, he suffered great pain and loss of time and rest, to his damage of $200, which defendant sought to recover against plaintiff as a counterclaim.

Upon the trial, plaintiff gave evidence as to the amount and value of the services rendered, and rested. Defendant then called Drs. Kilbourn and Kinloch, two surgeons, who testified that they were called, and found defendant suffering from a disease other than that for which plaintiff had been treating him, and performed two operations upon him, after which he speedily recovered. Defendant and his wife also gave evidence as to defendant's symptoms and treatment during his entire sickness. They testified to conversations with plaintiff in which they claimed to have notified her of symptoms tending to show the existence of the disease for which the operations were performed; but, notwithstanding the information thus given, they testified that plaintiff insisted that she fully understood defendant's case, and that he was suffering from the disease for which she had been treating him, and that she continued to treat him for that disease. Plaintiff then called Drs. Brown and Quin, two physicians, who, by defendant's consent, had been called in con-

sultation with her, but at different times, and both before the sur-
geons were called in. Dr. Brown testified that he examined defend-
ant physically, and inquired as to his symptoms, and defendant did
not disclose to him any symptoms of the disease for which the oper-
ations were performed. He pronounced the disease, from the symp-
toms given him and from his examination, the same as the plaintiff
did. Dr. Quin, who was called a week or two later than Dr. Brown,
testified that he discovered the disease for which the operations
were performed, and had the surgeons called to operate upon de-
fendant. He also testified that he asked defendant if he had given
the plaintiff certain information which he had given him, and de-
fendant admitted that he had not, and gave the reasons why he had
not told her. The evidence of these two physicians as to their in-
terviews with defendant, and what they then learned, was strenu-
ously objected to by defendant as privileged and inadmissible under
sections 834 and 836 of the Code of Civil Procedure. The objection
was overruled, and defendant excepted. The correctness of this
ruling is challenged upon this motion.

Section 834 provides as follows:

"A person, duly authorized to practice physic or surgery, shall not be allowed
to disclose any information which he acquired in attending a patient, in a pro-
fessional capacity, and which was necessary to enable him to act in that
capacity."

Section 836, so far as it has any application here, is as follows:

"The last three sections apply to any examination of a person as a witness,
unless the provisions thereof are expressly waived upon the trial or examina-
tion by the person confessing, the patient or the client. * * * The waivers
herein provided for must be made in open court, on the trial of the action, or
proceeding."

The statute is broad enough to cover the evidence objected to,
unless the defendant waived the statutory provision, either by vol-
untarily offering his testimony in regard to the facts as to which
the privilege existed, or by calling other witnesses as to such facts.
Westover v. Insurance Co., 99 N. Y. 56, 1 N. E. 104; Loder v. Whelp-
ley, 111 N. Y. 239, 18 N. E. 874; Buffalo Loan Trust & Safe-Deposit
Co. v. Knights Templar & Masonic Mut. Aid Ass'n, 126 N. Y. 450, 27
N. E. 942; Grattan v. Insurance Co., 92 N. Y. 274; Renihan v. Den-
nin, 103 N. Y. 573, 9 N. E. 320; People v. Murphy, 101 N. Y. 126, 4
N. E. 126; Feeney v. Railroad Co., 116 N. Y. 375, 22 N. E. 402, 5
L. R. A. 544; Fisher v. Fisher, 129 N. Y. 654, 29 N. E. 951. There-
fore the main question involved upon this motion is whether this
defendant has waived the right to have the evidence of the two
physicians called by plaintiff regarded as privileged.

In Re Coleman's Will, 111 N. Y. 220, 19 N. E. 71, the court of
appeals held that, where the testator requested his attorney to sign
the testator's will as a witness, it amounted to an express waiver
within the meaning of section 836 of the Code of the pledge of se-
crecy, and authorized the attorney to state all the facts learned
through their professional relations.

In McKinney v. Railroad Co., 104 N. Y. 352, 10 N. E. 544, plain-
tiff, upon the first trial, called her physician as a witness, who tes-

tified fully in her behalf as to all of the facts bearing upon her physical condition, as affected by the accident, upon defendant's railroad, as learned by him in his attendance upon the plaintiff. Upon a subsequent trial, defendant called the physician, and sought to prove by him the injuries claimed to have been suffered by plaintiff in consequence of the collision in question. Plaintiff objected to the evidence as privileged under section 834 of the Code. The objection was sustained, and the evidence excluded. The court of appeals reversed the judgment, and held that the evidence should have been received; that, the plaintiff in that case having once removed the ban of secrecy, no further injury could be inflicted upon her rights and interests which the statute was intended to protect. The nature of the information was of such a character that, when it was once divulged in legal proceedings, it could not be again hidden or concealed.

In People v. Schuyler, 106 N. Y. 306, 12 N. E. 783, the court says:

"The object of the section referred to (834) was to prevent the disclosure by a physician of his patient's ailments and infirmities, and it may be queried whether it makes him incompetent to testify that his patient was free from disease of any kind; and was not Dr. Bassett, therefore, competent under any view of the case, to testify that the defendant was not insane, but sane? And when the defendant called experts, who had examined him, to testify as to his mental condition, and to show that he was insane, did he not waive his privilege under the section referred to, and throw open the inquiry as to his mental condition? In other words, can a party himself, upon a trial, expose his ailments, and make them the subject of inquiry, and then object that his physician shall tell anything he knows about them? We do not deem it important to answer these questions at this time, and leave them to be solved when the exigencies of some future case may require it."

In Treanor v. Railway Co. (Com. Pl.) 16 N. Y. Supp. 536, plaintiff testified minutely and circumstantially to the effect of the blow upon her physical condition, and disclosed to the jury, without reservation, all the ill consequences of the injury to her health and comfort. The court held that by so testifying plaintiff waived the provisions of section 834 of the Code, and it was competent for defendant to call her attending physician, and prove by him that she suffered from no such injuries as she represented.

In Marx v. Railway Co., 56 Hun, 575, 10 N. Y. Supp. 159, an action was brought to recover damages for personal injuries sustained by plaintiff through the alleged negligence of defendant. Upon the trial, plaintiff, as a witness in his own behalf, gave evidence of all that, he claimed, had transpired between himself and the physician whom he had consulted in regard to his injury. The court held that, by so doing, plaintiff had waived the privilege as to the testimony of the physician, and that it was competent for defendant to prove by the physician what transpired between him and plaintiff.

The last two cases were questioned, but not overruled, in Morris v. Railway Co., 148 N. Y. 93, 42 N. E. 410. That was an action brought to recover damages for personal injuries alleged to have been caused by defendant's negligence. About the time of the commencement of the action, two physicians attended plaintiff for the purpose of making an examination of her case, and ascertaining the extent and nature of the injuries which she received in the accident.

Plaintiff called one of the physicians as a witness in her behalf, who gave important testimony bearing upon the character and extent of her injuries. His opinion was based principally upon the examination he had made with his associate physician. The court held that by so doing the plaintiff had waived the privilege as to the other physician, and it was competent for defendant to call the associate physician as a witness, and prove by him his version of the examination of plaintiff, and his opinion, based thereon, as to the extent and character of her injuries. The court intimated that the Marx and Treanor Cases, supra, carried the principle of waiver too far, and intimated that the rule decided in that case should be applied only to such consultations or transactions as both physicians participated in, and not to separate and distinct consultations or transactions with each physician separately.

The latest decision to which my attention has been called is Rauh v. Deutscher Verein, 29 App. Div. 483, 51 N. Y. Supp. 985. That was also an action to recover damages for a personal injury. Plaintiff, as a witness in her own behalf, testified to the treatment by the physicians at the hospital to which she was taken. The court held (two justices dissenting) that, by testifying as to the transaction between herself and the physician, the plaintiff waived the privilege, and defendant had the right to call the physician, and prove by him what he discovered as to plaintiff's condition.

While the cases cited are not entirely harmonious, yet the general trend of the decisions is such that I am convinced that no error was committed upon the trial in receiving the evidence of Drs. Brown and Quin. As applied to the facts of this case, the decisions seem to hold that defendant had the right to insist that all the physicians who attended him should remain silent as to his ailments, and as to any personal communications between him and them of a confidential nature. But when he testified in his own behalf as to the way he had been treated by the different physicians, gave conversations, between him and them, uncovered the maladies from which he was suffering, both by his own testimony and that of other witnesses, including that of two of the physicians who attended him, he waived the privilege as to the remaining physicians in reference to the matters disclosed. Plaintiff then uncovered and made public what before was private and confidential. It amounted to a consent on defendant's part that all who were present and participated in the various transactions disclosed might speak freely as to what took place. When a waiver is once made, it is general, and not special, and its effect cannot be limited to a particular purpose or a particular person. After the information has once been made public, no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect, by its repetition at another time or by another person. In the case last cited the court said:

"We must adopt one of two principles in cases of this character,—either to allow the plaintiff to testify as to the operations that were performed, and as to what happened at the hospital while she was under treatment, and not allow testimony to contradict her statements, or else we must hold that by such

testimony she waived the privilege that entitled her to object to the testimony of the only person who could contradict her."

It must be borne in mind that the defendant in the case at bar demanded an affirmative judgment against the plaintiff for damages for negligence or incompetency in the treatment of his case. Defendant and his wife gave direct evidence in defendant's behalf, going into all the details of plaintiff's treatment of defendant, during the entire period in which he was under her charge. It would appear unfair and unreasonable to permit defendant and his wife, the ones most interested in the recovery of an affirmative judgment by defendant, to give evidence as to what occurred during the entire time plaintiff was treating defendant, and yet forbid the plaintiff to call the physicians associated with her in the diagnosis and treatment of the case for the purpose of contradicting the defendant and corroborating the plaintiff's testimony. Irrespective of the coloring which defendant's interest in the case might have given to his testimony, his lack of professional knowledge might have exposed him to mistakes in testifying, and, even though he gave his testimony in the utmost good faith, it might have been very misleading. The rule contended for by defendant in this case would leave a physician absolutely at the mercy of an unscrupulous patient. I am therefore of the opinion that the evidence of Drs. Brown and Quin was properly received, and the motion must be denied.

Motion denied.