McKENNEY v. AMERICAN LOCOMOTIVE CO. (No. 262/76.)

(Supreme Court, Appellate Division, Third Department. November 11, 1914.)

1. WITNESSES (§ 219*)—PRIVILEGED COMMUNICATIONS—WAIVER OF PRIVILEGE.
    Where, in an action for injuries to plaintiff's eye, he testified that a certain physician treated the eye immediately after the accident, that it was swollen, that the physician fixed him up in good shape and sent him home, and told him to come back later on, and that the eye was so badly swollen and bruised that he could not treat it at that time, he waived the privilege as to such physician's testimony, and it was error to exclude the physician's testimony that the eye was not swollen at that time, and as to its actual condition.

    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 769, 781, 782; Dec. Dig. § 219.*]

2. DAMAGES (§ 168*)—EVIDENCE—PERSONAL INJURIES.

In an action for injuries to plaintiff's eye, evidence that a cataract on the eye was a congenital cataract, which had been there from birth, and not one caused by the accident on account of which suit was brought, was material.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 480, 482–486; Dec. Dig. § 168.*]

Woodward and Lyon, JJ., dissenting.

Appeal from Trial Term, Schenectady County.

Action by Frederick B. McKenney against the American Locomotive Company. From a judgment for plaintiff on the verdict of a jury, and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Alonzo P. Strong, of Schenectady, for appellant.

James J. Barry, of Schenectady (James A. Leary, of Saratoga Springs, of counsel), for respondent.

SMITH, P. J. [1] This judgment and order must be reversed for the error of the trial judge in excluding the testimony of Dr. Lord, sought to be adduced by the defendant, as to the condition of the plaintiff's eye prior to the accident. A physician examined in behalf of the plaintiff may be asked on cross-examination whether he had not treated the patient for the same disease at a prior time. Marquardt v. Brooklyn Heights R. R. Co., 126 App. Div. 272, 110 N. Y. Supp. 657. He may also be asked respecting what he learned upon a subsequent examination, after his treatment at the time of the accident had ceased. Powers v. Metropolitan Street Railway Co., 105 App. Div. 358, 94 N. Y. Supp. 184. This, of course, is upon the assumption that the privilege had been waived by the plaintiff. In the case at bar the plaintiff had sworn that Dr. Lord had treated his eye, and in fact had treated both eyes immediately after the accident; that the right eye was swollen, it seemed to him, as large as his head; that Dr. Lord treated him for some time, and had treated him since; that he doctored the eye; that plaintiff was suffering from headache, and he gave him stuff to put on his head and for the headache at the time; that he went to Dr. Lord after the injury, and Dr. Lord fixed him up in good shape and sent him home, and told him to come back to him later on; he told him to come back in a couple of days and he would treat his eye; that the eye was so badly swollen and bruised that he could not treat it at that time, so he said to come back. That the testimony of the plaintiff as to the nature of his injuries and his treatment by the physicians waives the privilege of the physician seems to have been held in Rauh v. Verein, 29 App. Div. 483, 51 N. Y. Supp. 985. This case is cited with approval in Capron v. Douglass, 193 N. Y. 18, 85 N. E. 827, 20 L. R. A. (N. S.) 1003, and also in Fox v. Union Turnpike Co., 59 App. Div. 369, 69 N. Y. Supp. 551. The plain import of the plaintiff's testimony is that the physician declined to treat the eye at that time because of

its swollen condition, making it impossible for him to give such treatment. It would seem clear that this testimony would authorize the physician to swear that the eye was not swollen at that time, and also to swear what was its actual condition. Such was the evidence sought to be given by the defendant, and ruled out, as we think erroneously, by the court.

[2] That this testimony was very material is shown by the history of the case. The claim is that the injury produced a cataract upon the eye. That there is a cataract on the eye is admitted. The defense claims that it was a congenital cataract, one which had been there from birth, and not one caused by the accident. If so, the defendant should not be required to pay for plaintiff's misfortune.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except WOODWARD, J., dissenting, in opinion in which LYON, J., concurs.

WOODWARD, J. I must dissent from the opinion expressed by the learned Presiding Justice that this judgment must be reversed. There is only one question necessary to be discussed, and that is the ruling of the trial justice upon the defendant seeking to bring out testimony as to an alleged previous diseased condition of the plaintiff's eye from Dr. Lord, who had treated the plaintiff for the injury for which he was seeking recovery. The plaintiff was injured by being hit in the right eye by a joint of a hose which became disengaged while in use by the plaintiff in the performance of his duties as a valve setter in the defendant's plant at Schenectady. He was sent by the defendant to Dr. Lord for treatment, and upon the trial the defendant attempted to bring out testimony from this doctor to the effect that the plaintiff was afflicted with a congenital cataract, and this, if established, would undoubtedly tend seriously to lessen the damages sustained by the plaintiff, who is said to have lost nearly all sight of the right eye.

It is not questioned by the defendant that the doctor was not a proper witness under the provisions of section 834 of the Code of Civil Procedure in the first instance; but it is urged that the plaintiff had opened the door to his testimony by his own examination, and Rauh v. Deutscher Verein, 29 App. Div. 483, 51 N. Y. Supp. 985, is relied upon for this proposition. "Close cases make bad law," and it is always well, in considering the authority of a case which impinges upon the letter of the statute, to take into consideration the peculiar facts of that case, and not to extend its authority to those which are not well within the limits indicated. In the Rauh Case the plaintiff in an action for personal injuries testified on her direct examination in regard to the accident, and as to the operations which were performed upon her at the hospital, and as to her treatment by the physicians both before and after the operation, and it was held that it was proper to call the physician who had attended her, and to ask him, in reference to his diagnosis of the case, "What did you find?" It was assumed throughout the case that the witness had disclosed her version of what took place throughout her treatment for the particular injuries. She had herself raised the veil, and disclosed the secrets of the operating room

and the treatment which followed; and it was held that she had no right to close the door to the testimony of those who could dispute her version of what had occurred.   Thus limited, there is no doubt that this case is within the spirit of the statute, which merely aims to protect the patient in the confidential communications with a physician. When the patent has in his own behalf opened the door to the public, when he has himself disclosed these secret and confidential revelations, he cannot invoke the statute to protect himself against the testimony of those who are in a position to bring out the exact truth.   Any other construction of the statute would enable a patient to testify to any kind of facts which would serve his own purposes, and then to fraudulently prevent the defendant from obtaining any evidence to dispute or modify its effect, and it is never the policy of the law to promote fraud. Capron v. Douglass, 193 N. Y. 11, 16, 17, 85 N. E. 827, 20 L. R. A. (N. S.) 1003; People v. Bloom, 193 N. Y. 1, 7, 85 N. E. 824, 18 L. R. A. (N. S.) 898, 127 Am. St. Rep. 931, 15 Ann. Cas. 932.

The problem in each case is to determine when the party claiming the privilege has opened the door; that is the true test to be applied, and it matters not whether this is done by the party calling the physician in his own behalf, or in testifying to the facts on which the statute is designed to operate.   In either event, if the door is opened, the waiver is complete, and the party, once having disclosed the secrets of the consultation or examination, cannot be permitted to invoke the protection of the statute.   People v. Bloom, supra.   But the mere fact that the plaintiff himself, in detailing the facts and circumstances surrounding his injury, makes mention of the name of a physician who has treated him, or discloses the fact that the physician did treat him for the then present injury, does not open the door to the disclosure of facts which came to the attention of the physician in his examination of the patient, any more than the door would be opened if the plaintiff called the physician himself and limited the examination to matters dissociated from the treatment of the case.   In the case now under consideration the plaintiff did not testify to a single thing that Dr. Lord might not have testified to, either as the plaintiff's witness or if called in behalf of the defendant, with section 834 invoked, and this distinguishes it clearly from the case relied upon by the defendant.

The testimony of the plaintiff, after having detailed his injury and the producing causes of such injury, is, in so far as it relates to Dr. Lord, as follows:

"Q. What treatment did you have from any physician?  A. I had treatment from Dr. Lord.   Q. He treated you for how long?  A. For five or six months. Q. What part of your anatomy did he treat?  A. My eye.   Q. Which eye? A. The right eye, and the left eye, also.   Q. Where did the coupling strike you?  A. In the right eye.   *  *  *   Q. Dr. Lord continued to treat you for some time?  A. He has treated me since.   Q. What did he prescribe for you? A. He doctored the eye right along.   I was suffering from headaches for a long time.   He gave me stuff to put on my head and for the headaches at that time.   I was fitted with glasses.   Q. Had you ever worn glasses before that time?   A. No, sir."

On cross-examination the plaintiff merely said in answer to a question that he went back to Dr. King and had "some further treatment" for his eyes, and went from there down to Dr. Lord's, and that he

(Lord) gave him some further treatment for his eyes. He further testified that he paid nothing to Dr. Lord for his services, and it appeared from the evidence that Dr. Lord was paid by the defendant for his services to the plaintiff, with the exception of a charge for some glasses. On redirect examination plaintiff was asked: "Did Dr. Lord treat you after you went to see him?" He replied:

"He fixed me up in good shape and sent me home. Q. What did he say as to the condition of your eye that day? A. To come back to him to be treated later on. Q. What did he say? A. He said for me to come back in a couple of days and he would treat my eye. Q. What was the condition of your eye the first day? A. It was swollen so badly and bruised that he could not treat it at the time. So he said to come back."

Obviously here was no disclosure of anything of a confidential or privileged nature occurring between the patient and his physician. If Dr. Lord had been called, he might have testified to these same matters, and they would not have been open to objection. "There is nothing in section 834," say the court in Patten v. U. L. & A. Ins. Association, 133 N. Y. 450, 453, 31 N. E. 342, 343, "which prohibited the defendant from showing that Patten was the patient of the doctor, that he attended him as a patient, and that he was sick. Nor is there anything in that section which prohibited the doctor from testifying whether he was called upon to attend Patten professionally before or after the date of the certificate, or to tell how many times he attended him, whether daily or hourly, from the 19th day of April to the 16th day of May." So in Becker v. Metropolitan Life Ins. Co., 99 App. Div. 5, 9, 90 N. Y. Supp. 1007, the defendant sought to show by one Dr. Roper that upon the evening of October 30, 1899, he was called upon to attend the deceased in his professional capacity; also whether he at that time did so attend him; also whether he had any record of the dates when he attended the deceased, in Norwich or elsewhere; also if he remembered how long the deceased was confined to his house in October, 1899; also to give the dates between October 30, 1899, and the 1st of April, 1900, when he was called in to attend the deceased, or when the deceased called at his office to receive medical attendance from him. His answers to each of these questions were excluded, on the ground that they were prohibited under section 834 of the Code of Civil Procedure, and the court held this to be error; that neither "of them called for information that was in violation of such section."

Under the above authorities it is entirely clear that none of the matters testified to by the plaintiff in this action had any tendency to open the door to the defendant's own physician, who had treated the plaintiff professionally. There was not a single disclosure of anything of a confidential or privileged nature, and so long as the plaintiff refrained from bringing out any matters which would have been privileged if asked of Dr. Lord, it is contrary to all reason and authority to contend that there was a waiver of the privilege secured by the statute to the plaintiff. If the plaintiff had testified, for instance, that the doctor had made an examination of his right eye, and that the doctor had then told him that his eye was ruined, that it would be permanently blind, or that the injury had resulted in such a shock to the nervous system that it

would destroy the sight of the left eye, it would have been entirely proper for the defendant to have called Dr. Lord, and to have shown by him what he found upon the examination in reference to the injuries. This would have been within the authority of Rauh v. Deutscher Verein, supra, and the other cases in which that case has been cited.

What the defendant has sought to do here is, not to examine Dr. Lord in respect to any revelations made by the plaintiff in reference to what occurred between himself, and his physician in connection with this injury and its treatment, but to bring out evidence tending to show that in the examination made of the plaintiff for the purpose of treating the injured eye Dr. Lord discovered evidences of a congenital cataract in this right eye. This is the very type of information which the statute undertook to make privileged, and it would make a farce of the policy of the law if the plaintiff in negligence actions, merely telling his story of his accident and of the doctors who treated him, could be deemed to have waived the privilege, so as to permit of a disclosure of every diseased condition which a defendant's own physician, intruded into the case, happened to discover in the plaintiff. "The exclusion," say the court in Edington v. Ætna Life Ins. Co., 77 N. Y. 564, 571, "is aimed at confidential communications of a patient to his physician, and also such information as a physician may acquire of secret ailments by an examination of the person of his patient. The policy of the statute is to enable a patient, without danger of exposure, to disclose to his physician all information necessary for his treatment."

Dr. Lord was examined in reference to the matters stated by the plaintiff, and was asked, "At that time did you examine Mr. McKenney's right eye, to discover whether or not there was any injury to it?" This was objected to, on the ground that it disregarded the provisions of section 834; but the objection was overruled, and the doctor replied in the affirmative. He was then asked, "On that examination, state whether or no you discovered any defect in that eye." This was objected to on the same ground, and the objection was sustained; the defendant excepting. It is conceded that the purpose of this question was to bring out evidence which was privileged, unless the privilege was waived; that its purpose was to develop that the plaintiff had a congenital defect in the eye, which would account for a large part of his claimed defect in vision; and this was the only question in the case, either to the plaintiff or to Dr. Lord, which involved the question of privilege under the statute, and the ruling of the court was entirely right. In Nelson v. Village of Oneida, 156 N. Y. 219, 50 N. E. 802, 66 Am. St. Rep. 556, the court held that the prohibition by section 834 of the Code of Civil Procedure of the disclosure of professional information by a physician, extends to information of the existence of an ailment, although not the subject of his attendance or treatment, acquired through an examination of the patient in attending him in a professional capacity, and the discovery of which was a necessary incident to the investigations made to enable the physician to act in his professional capacity as to the subject of his attendance.

That is exactly the situation here. Nothing that was said or done by the plaintiff indicated any intention of waiving his rights under the

statute and to permit the defendants to call Dr. Lord to prove matters which he may have discovered while acting professionally for the plaintiff. It is going as far as the authorities will permit to hold that anything short of an express waiver upon the trial will operate to waive the rights of the patient (Patnode v. Foote, 153 App. Div. 494, 497, 138 N. Y. Supp. 221); but no case has yet held that the mere incidental examination of the plaintiff as to who attended him on the occasion of an injury to his person entitles the physician to come into court and disclose those privileged matters which the law says shall not be disclosed, except where the privilege is "expressly waived upon the trial." It may be said to be expressly waived where the patient testifies to the privileged matters; but he does not surrender his rights by every incidental mention of his physician's name, or by admitting that he had treatment by him. Indeed, it is necessary to know that these things existed in order to establish his right to challenge the disclosure. The burden of proof is upon the party seeking to bring the case within the section, and to make it appear, not only that the information which he seeks to exclude was acquired by the witness in attending the patient in a professional capacity, but also that it was necessary to enable him to act in that capacity. People v. Schuyler, 106 N. Y. 298, 12 N. E. 783; People v. Koerner, 154 N. Y. 355, 365, 48 N. E. 730. The examination of the plaintiff did not go beyond this point, and the trial court was obviously right in its ruling.

The judgment and order appealed from should be affirmed.