the cross-walk. After the young man got on the conductor gave the signal to start the car. After the car had started there was a man came out to the rear end of the car and got hold with his left hand, came from behind the car. Just as the car started this man came running from behind and grabbed hold of the rear handle and tried to get on, and had one foot on and it slipped off. That he helped the man on and hollowed to the conductor to stop the car. The conductor testified that he was inside the car; that there was no one else besides this young man spoken of on the cross-walk, or near it, at the time the car started on; that he gave the signal for the car to start, and started forward in the car, when his attention was attracted by a call from the vestibule to stop the car, which he did, and went to the rear, where he found the plaintiff, who had been helped aboard the car, and took his name. The motorman testified that he saw the young man at the crossing and stopped the car for a complete stop about a second, and got the signal to go ahead. He was looking at the crossing; did not see any one but the young man.

The court, at the request of the defendant, charged the jury that no recovery could be based on any negligence on the part of the conductor. As that was the law of the case, for the purpose of the trial the verdict of the jury must be regarded as based solely upon the negligence of the motorman, the only other person engaged in operating the car. The motorman could not have been charged, upon the evidence, with any negligence. The accident occurred at the rear of the car, at a crossing, where it was the duty of the motorman to start the car ahead upon receiving the conductor's signal, which he did. No negligence can be attributed to the act of the motorman in starting the car under the circumstances, and therefore the judgment entered upon the verdict must be reversed.

Judgment and order denying the motion for a new trial reversed, and a new trial granted, with costs to the appellant to abide the event, upon questions of law only. All concur.

---

McLOUGHLIN v. SYRACUSE RAPID TRANSIT RY. CO.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

1. CARRIERS—INJURIES TO PASSENGER—NEGLIGENCE—EVIDENCE.

In an action for injuries to a passenger on a street car, testimony of plaintiff that, when the car stopped at a street intersection, he attempted to board it, and that the car started suddenly and without warning, throwing him to the ground, warranted the jury in finding for plaintiff.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1313.]

2. RELEASE—CAPACITY TO EXECUTE—WEIGHT OF EVIDENCE.

Evidence, in an action for injuries to a passenger, examined, and *held* to show that plaintiff was rational and realized what he was doing at the time of executing a release of damages sustained.

3. TRIAL—INSTRUCTIONS—QUESTIONS BY JURRORS—REQUESTS BY COUNSEL.

On the issue of mental capacity of one executing a release of damages for personal injuries, a physician testified that the effects of chloroform administered to such person on the evening of the injury had wholly dis-

appeared next morning, when the release was executed. The court, in enumerating to the jury the circumstances which might be considered by them as shedding light upon the condition of the person injured, at the time of executing the release, included the fact that he took chloroform. At the conclusion of the instruction, one of the jurors inquired: "I, not being a doctor, would like to know how long chloroform would be liable—" He was interrupted by the court, who said: "You have got to decide this case on the evidence before you. There is no evidence of that." Counsel for defendant objected to this statement, and requested the court to refer to the physician's testimony, which request was refused. *Held*, that the refusal of the court to hear the juror and grant counsel's request, was error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 81.]

Appeal from Onondaga County Court.

Action by John McLoughlin against the Syracuse Rapid Transit Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Charles E. Spencer, for appellant.
Frank L. Woods, for respondent.

SPRING, J. The plaintiff, 80 years of age, was injured on the 19th of October, 1905, while boarding one of the defendant's cars at the intersection of South Warren and East Fayette streets in the city of Syracuse. He testified that, when the car stopped at this street intersection, he attempted to get on board; that the car started suddenly and without warning, throwing him to the ground and dislocating his arm at the shoulder and otherwise injuring him. We think the jury were warranted in finding the defendant's employés guilty of the negligence imputed to them, and the plaintiff free from blame contributing to the injuries.

The defendant alleged, and has given proof in support of its claim, that the plaintiff voluntarily released all damages sustained by him by reason of this accident for the sum of $25 in cash and the further agreement to pay the physicians who attended him and the account at the hospital. After the accident the plaintiff was taken to the St. Joseph's Hospital, and his arm reduced that evening. On the day following, at the solicitation of the claim agent of the defendant, he executed a release of all damages sustained by him on account of this accident. The consideration recited was $25, and that sum was paid to him. The plaintiff, to avoid the effect of the release, testified that by reason of his injuries and his condition at the time he was not conscious of executing the release. The evidence does not show when he first learned of its execution, but upon the trial his counsel tendered to the defendant the sum of $25, with the statement that he had then first seen the release "and knew the claim that they had paid," but the money was not accepted by the defendant.

The question of the plaintiff's mental condition at the time of the execution of the release was submitted to the jury, with the statement that, if the plaintiff·was mentally incapable of comprehending the import of the settlement and release, it was not his conscious act, and that he

would not be bound thereby, and we have no criticism to make with this specific instruction standing alone. The plaintiff had the right to disaffirm the release, if he was the victim of a fraud in its execution, or if by reason of his lack of mental capacity at the time he did not understand what he was doing. When he discovered that he had been victimized, if such was the fact,·he was called upon to promptly rescind the agreement and offer to restore the money to the company which it had paid him, if he intended to make any further claim against it for the injuries he had sustained. He could not, knowing of this release, retain the money paid him and still recover for the damages. Doyle v. N. Y., O. & W. R. Co., 66 App. Div. 398, 72 N. Y. Supp. 936.

Of course, he could not rescind until he knew of the release, or was put upon inquiry concerning it, and the record does not disclose when he first acquired this information, although the answer in general language alleges the settlement and release. On the question of whether he realized that he was executing the release and comprehended its contents, he testified, as already noted, that he had no recollection of it. He, however, testified that a day or two after he left the hospital and went home he found the money in his pocket, and there is no evidence that he did not know who paid it to him and for what purpose, and yet he never offered to return it to the defendant until during the trial. On behalf of the defendant, Mr. Barnes, its claim agent, and the nurse at the hospital testified to the transaction, and that the release was read over to the plaintiff and executed by him, and that he was rational and accepted the money paid to him. The two physicians who attended him saw him that morning, and each testified that he was rational. In view of this testimony, we think the weight of the evidence on this question is decidedly against the plaintiff, and the verdict of the jury, for this reason, should have been set aside.

We are further led to the conclusion that a new trial should be had by reason of what transpired after the main charge of the county judge. It appeared that on the evening of the injury chloroform was administered to the plaintiff. Dr. Flaherty, one of the physicians, testified that its stupefying effect had wholly disappeared by the following morning. The court, in enumerating to the jury the circumstances which might be considered by them as shedding light upon the condition of the plaintiff at the time of the execution of the release, included "the fact that he took chloroform." Immediately after the court had concluded his instructions, one of the jurors inquired:

"I, not being a doctor, would like to know how long chloroform would be liable—"

He was interrupted by the court, who said:

"You have got to decide this case on the evidence before you. There is no evidence of that. I will say that there were two physicians on the stand, and two learned and very able lawyers presented the case. They presented the facts which both of them thought advisable from their different standpoints, and you have got to determine it by that, and you may apply your experience."

It will be observed that the juror was attempting to gain information upon a subject which had been made material in the case, and his inquiry was therefore pertinent, and, the court failing to enlighten him thereupon, the following occurred:

"Mr. Mitchell: In view of the question of the juror, I ask your honor to say that Dr. Flaherty—

"The Court: That statement is improper.

"Mr. Spencer: I desire to take an exception to your honor's remark that there is no evidence on that subject, and in view of the question I desire to ask your honor, in view of your honor's answer to the juryman, to refer to the evidence of Dr. Flaherty on that subject.

"The Court: Whatever I have said in regard to the evidence, I leave it entirely to you, for I may very likely be mistaken."

The two counsel who thus endeavored to intercede represented the defendant, and, so far as the record discloses, they were justified in requesting the court to explain to the juror the subject which was apparently disturbing him, and we think the court was in error in declining to hear the juror and the counsel and to pass upon these various requests. We appreciate that in the trial of an action the surroundings, the course of the trial, and the demeanor of counsel are often very properly influential with the trial court in his decision in refusing any further instructions to the jury, and none of these features become a part of the record on appeal; but the interruption here was by a juror evidently in good faith and upon a point made of some significance upon the trial and by the trial judge in his charge, and whatever occurred subsequently seems to have been in the endeavor to meet the suggestion or inquiry of this juror.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event, upon both law and facts.

So ordered. All concur.