sustained by reason of it. In such case the right of forfeiture is denied the party, his right exists in the contract, and his remedy for relief rests in his assertion and proof of damages for the defective performance by the other party, whose right, subject to such claim, remains effectual." Parke v. Franco-American Trading Co., 120 N. Y. 51, 56, 23 N. E. 996, citing Avery v. Willson, 81 N. Y. 341, 37 Am. Rep. 503. Not only had defendant originally accepted the work, but, assuming that he did so in ignorance of the alleged condition of one of the piles, he subsequently, and after knowledge of the defect, continued to use the gangway and the construction until the end of the season, notwithstanding he was under no obligation to remain.

It seems to us that there was a waiver of the alleged defective performance of the contract by plaintiff, and that justice will be done the defendant by allowing the damages found by the trial court to have been sustained by him. As we are of opinion, from the facts disclosed, that no useful purpose will be served by a new trial, we have concluded to modify the judgment, by granting judgment in favor of the plaintiff for the sum of $270.47, being the difference between the contract price of the work performed by the plaintiff, less the sum of $100, the damages found to have been suffered by the defendant.

As thus modified, the judgment will be affirmed, without costs in this court. All concur.

---

### SHAW v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—BRAKEMAN—ASSUMED RISK.
     Where plaintiff, a brakeman, in endeavoring to uncouple certain cars, discovered that he could not do so by using the lever, and thereupon attempted to raise the pin with his hand, and in doing so was injured by his arm being caught between the dead blocks, he could not recover under an instruction that, while it was defendant's duty to supply a safety coupling device or an automatic coupler, after it had done so its obligation to keep the same in repair was the same as any other part of its equipment, and, if plaintiff knew that the device was out of order when he went between the cars and gave the signal to the engineer, he could not recover.

2. RELEASE—CAPACITY OF GRANTOR—FRAUD—EVIDENCE.
     Evidence *held* insufficient to sustain a finding that a release executed by plaintiff to defendant had been obtained from him by fraud, and that he was incapacitated at the time he executed it from intoxication.
     [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Release, § 108.]

3. SAME—DISAFFIRMANCE—TIME.
     Where fraud has been practiced to obtain a settlement of an action for injuries and a release, plaintiff, in order to disaffirm the same, must act promptly on discovering the fraud, and return the consideration paid.
     [Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Release, § 38.]

Appeal from Trial Term, Onondaga County.

Action by Charles M. Shaw against the Delaware, Lackawana & Western Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, it appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

A. D. Jenney, for appellant.
Theodore E. Hancock, for respondent.

KRUSE, J. The plaintiff, a brakeman in the defendant's employ,. had his right arm crushed while attempting to uncouple one car from another. He contends that he was hurt through the fault of the defendant; the precise grounds of negligence urged against the defendant being a defective automatic car coupler. It seems that the coupler, when in good condition, was operated by means of a lever attached to the end or side of the car, thus making it unnecessary ·to go between the cars. In this instance the chain which was used in lifting the pin had become disconnected, so that the pin could not be· raised by means of the lever, making it necessary, as the plaintiff· claims, for him to go between the cars and raise the pin with his fingers. In doing that his arm below the elbow was in some way caught between the dead blocks. The car in question did not belong to the· defendant. Very little of its history is known, so far as the record discloses. How long it had been defective is a matter entirely of conjecture, and it is equally uncertain what was the condition of the car when it passed the inspection points (which are at Syracuse and Binghamton). Indeed, it does not appear when it passed through either of those points, nor when it·came onto the defendant's railroad. We have· the bare fact that the car was left at Cortland (where this accident occurred) the day before the accident, and, so far as we know, the· defect was first discovered by the plaintiff just before· he was hurt. That the appliance would not work was known to the plaintiff before he went between the cars to uncouple them, since he had tried to uncouple the cars by using the lever, which failed to work. It is now urged on behalf of the defendant that the plaintiff was not himself free from negligence, and that, in any event, he assumed the risk of going between the cars as he did.

The trial court charged the jury, in substance, that while under the statute it was the duty of the defendant in the first instance to supply a safety coupling device, or an automatic coupling device, that, after having done that, its obligation to keep it in repair was the same as any other part of its equipment, and further charged them that, if the plaintiff knew that the coupling device was out of order when he went in between the cars and gave the signal to the engineer, he could not recover, leaving it a question of fact for the jury whether the plaintiff knew that fact. If that charge was correct, and for the purposes of this appeal we must so regard it, it is difficult to see how there can be any liability against the defendant. I think the proof showed beyond question that the plaintiff knew that the coupling device was out of order. In fact, there was no occasion for his going between the cars at all, except, as he claims, the automatic coupling device would not work.

· There is, however, another question in the case, which we think requires the reversal of this judgment and the granting of a new trial.

The plaintiff was injured on the 26th day of August, 1904, and was taken to a hospital on the same day—Friday. On the following Monday, as the plaintiff claims, the defendant's claim agent had an interview there with him regarding his injuries, and about six weeks after that the matter was compromised, according to the defendant, and a release given by the plaintiff. Had the transaction been closed at the hospital, there might be much more reason for the contention which the plaintiff now makes, that an undue advantage was taken of him, on account of the pain and suffering, and the mental disturbance which he was then undergoing. But such was not the case. It was not until after the plaintiff had gone back to work for the defendant that the release was given by him. The plaintiff was in the hospital about two weeks, and under the care of a physician about five weeks. He worked in the yards at Cortland for about two weeks, and then the defendant sent him to Syracuse, where he worked at "throwing switches" for about 2½ weeks. The defendant's claim agent testified that he saw the plaintiff for the first time on September 13th at the hospital; that he said to him that when he was in condition, and desired to talk with him, he would be very glad to take up the subject of making some compensation for the injury; that the matter was next discussed at Cortland October 21st; that the plaintiff then said he thought he ought to have $500, and that he replied that he would take up the matter later with the company; that the next conversation was November 4th, at Syracuse, when a settlement of $250 was agreed upon, and the next day the matter was closed up. The plaintiff received a draft for $250, payable to his order, made by the defendant's claim agent, directed to its treasurer, and at the same time signed a receipt for that sum, acknowledging full and final payment of all claims and demands on account of personal injuries received by him on August 26, 1904, specifically stating the nature of the injuries, and at the same time executed a general release to the defendant. The plaintiff admits that he executed the receipt and general release, and that he received the draft; and he also admits that he had the draft cashed at one of the banks in Syracuse. He denies, however, that he understood the contents or nature of the receipt and release. He claims that the talk between himself and the claim agent on the day before he received the draft and executed the papers was to the effect that the defendant was willing to give him $250 to help him along; the defendant's claim agent saying that he had no claim against the company, and that there was nothing said about the release. This occurred about half past 4 o'clock in the afternoon. The plaintiff went to work at 5 o'clock, and worked until 7 o'clock in the morning, as was his custom. He went to work again at 5 o'clock, and in the evening he was sent for, as he says, and went to the office, was told there that there was a check, and he would have to sign the receipt. Plaintiff says that he signed the papers, but did not read them, supposing that he was signing a receipt for the check. He admits that he had plenty of time to read them through, but that he was intoxicated at the time. The claim agent mailed the papers from Binghamton to Syracuse, to the defendant's superintendent, and was not present when the draft was delivered and the papers executed by the plaintiff, but the two subscribing wit-

nesses to the release testify to what occurred. One of them was chief clerk of the superintendent, and the other was timekeeper. The chief clerk testified that the plaintiff came to the office and asked whether anything had come for him; that he replied that there had, and went to the safe and took out the papers; that he handed the plaintiff a release and voucher; that the plaintiff read them over, and signed them. The other subscribing witness corroborated this testimony. Both testified that the plaintiff was not intoxicated at that time. This was on Saturday. On the following Monday morning the plaintiff received the money upon the check, indorsing the same, but claims that he did not even then read the check. He retained the money for about two years. Shortly before the commencement of this action his mother tendered to the defendant's superintendent at Syracuse her check upon the Onondaga County Savings Bank for the sum of $250, which was refused. This was the last of September, 1906, and the action was commenced on the 8th of October following.

On behalf of the plaintiff it is contended that the evidence shows that the release was obtained by fraud and misrepresentation, and that the $250 was not given in settlement of the plaintiff's claim. That question was submitted to the jury, and they found with the plaintiff upon that question. While we think that the learned trial judge was required to submit that question to the jury, we are of the opinion that the finding was contrary to the weight of the evidence. It is quite unbelievable that a man capable of switching cars, and able afterward to detail the occurrences of a transaction, should be so far under the influence of liquor at the time as not to be able to read and understand the papers which he signs and the nature of the transaction. Beyond that, he retained and indorsed the check, and obtained the moneys, when he himself admits that he was sober, and no offer was made to return the money until about two years afterward, and then by his mother. It may be true, as plaintiff's counsel contends, that if the $250 was paid to him as a mere gratuity, and not to settle and compromise his claim, he was under no legal obligation to return it. Wilcox v. American Telephone & Telegraph Company, 176 N. Y. 115–118, 68 N. E. 153, 98 Am. St. Rep. 650. But we think that the circumstances show that the money was paid to settle whatever claim he had, and that he so understood. At all events, we are clearly of the opinion that such is the weight of the evidence. Even if some fraud had been practiced upon him in making the contract of settlement, so that he could disaffirm the same, he was required to act promptly upon discovering the fraud, and pay back the money. McLaughlin v. Syracuse Rapid Transit Railway Company, 115 App. Div. 774, 101 N. Y. Supp. 196. The question here is not whether the plaintiff sustained damages amounting to $250 in the loss of his arm, but whether a settlement of a claim, disputed and doubtful at best, shall be upheld where the great preponderance of the credible evidence fairly shows that the compromise was fairly made. Such a settlement, in a negligence case, like any other, should be upheld. We think this case falls within that class.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.