## TREANOR *v.* MANHATTAN RY. CO.

*(Common Pleas of New York City and County, General Term. December 7, 1891.)*

1. ELEVATED RAILWAYS—NEGLIGENCE—DROPPING REFUSE IN THE STREET.

   In an action against an elevated railway company for personal injuries, it was shown that it was defendant's custom to shovel dirt and refuse from drip-pans under its track into carts standing in the streets, some 15 feet below the tracks, near a crossing; and that while this was being done a bottle contained in the refuse so thrown down struck plaintiff on the head. It was shown that such refuse might have been lowered into the carts in baskets. *Held,* that the evidence was

sufficient to warrant a verdict that the injuries were the result of defendant's negligence.

**2. PRIVILEGED COMMUNICATIONS—WAIVER—PHYSICIANS.**

Code Civil Proc. § 834, provides that a physician "shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity;" and section 836 declares that this shall apply to every examination of the physician, unless its provisions are expressly waived by the patient. *Held,* that where plaintiff, suing for personal injuries, has testified without any reservation whatever as to his injuries and their effect upon him, this is a waiver of the privilege, and it is error to exclude the testimony of his physician as to what he had learned of plaintiff's condition.

14 N. Y. Supp. 270, reversed.

Appeal from city court, general term.

Action by Susan Treanor against the Manhattan Railway Company for injuries to plaintiff's person caused by a blow from a bottle thrown by defendant's servants from its elevated railway into the street below, while plaintiff was walking along the crossing. There was a verdict for plaintiff, and from judgment thereon defendant appeals. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Davies & Rapallo,* (*Julien T. Davies, Samuel Blythe Rogers,* and *Joseph H. Adams,* of counsel,) for appellant. *Charles D. Ridgway,* for respondent.

PRYOR, J. On this appeal we have no jurisdiction to review the evidence, except to ascertain if it be sufficient to sustain the verdict; that is, sufficient to authorize the inference of defendant's liability. Plaintiff alleges that the bottle was thrown "carelessly and negligently;" but it is a question whether negligence be an essential element in the cause of action. The cause of the injury, *i. e.,* throwing the bottle, was the voluntary act of the defendant. "Looking into all the cases from the Year Book in 21 Henry VII., I find the principle to be that if the injury be done by the act of the party himself at the time, though it happened accidentally or by misfortune, yet he is answerable." GROSE, J., in *Leame* v. *Bray,* 3 East, 599. "Though a man do a lawful thing, yet if damage do thereby befall another he shall answer it, if he could have avoided it." *Lambert* v. *Bessey,* T. Raym. 423; *Weaver* v. *Ward,* Hob. 134; *Underwood* v. *Hewson,* 1 Strange, 596. And this ancient principle of liability appears to be still the law of New York. "Where the injury is not the effect of an unavoidable accident, the person by whom it is inflicted is liable to respond in damages." MARCY, J., in *Bullock* v. *Babcock,* 3·Wend. 391. In an action against the colonel of the seventh regiment for an accidental wound to a spectator by a shot from a gun supposed to be unloaded, the plaintiff had a verdict; and, on appeal from the judgment, DENIO, C. J., said: "I am of opinion that the judge might properly have instructed the jury that the evidence that the defendant had commanded the firing, and that one of the men fired a gun charged with a ball, by the discharge of which the plaintiff was wounded, was sufficient to sustain the action, whatever precaution the defendant and his subordinate officers had taken to provide against the accident." *Castle* v. *Duryee,* 41* N. Y. 169, 174. The law is propounded otherwise in Massachusetts, (*Brown* v. *Kendall,* 6 Cush. 292;) in Connecticut, (*Morris* v. *Platt,* 32 Conn. 75;) and by the federal supreme court, (*Nitro-Glycerine Case,* 15 Wall. 524.)

Assuming, then, the rule of liability as enunciated by these courts, namely, that an injury resulting from mere accident is not an actionable wrong, and that "the measure of care against an accident which one must take to avoid responsibility is that which a person of ordinary prudence and caution would use if his own interests were to be affected, and the whole risk were his own," (FIELD, J., 15 Wall. 524,) we are still of opinion that the evidence was ample to justify the inference of negligence against the defendant. The mode in which the defendant discharged the contents of its drip-

pans, namely, by shoveling them from an elevation of 15 feet into carts standing near the cross-way of a street in a populous city, when among those contents was a missile capable of inflicting serious injury on pedestrians below, was in itself sufficient to warrant an inference of the absence of the care and caution which the law exacts. The evidence discloses that the refuse in the drip-pans might have been lowered in baskets, and there is no pretense of warning to passengers along the street. "Instead of depositing the snow incumbering the roof in the yard attached to the premises of defendant, it was cast into the street, without any warning of danger being given to passers-by. It was negligence in the highest degree to throw snow and ice from the roof of a building into a thoroughfare of a crowded city, without using some precautions against accident." WRIGHT, J., in *Althorf* v. *Wolfe,* 22 N. Y. 359.

Supposing the proof sufficient to sustain the inference of negligence, still defendant impeaches the judgment for errors upon offers of evidence. To aggravate the amount of her recovery, the plaintiff testified minutely and circumstantially to the effects of the blow upon her physical condition, and disclosed to the jury, without reservation, all the ill consequences of the injury to her health and comfort. Thereupon the defendant called the physician who had attended the plaintiff, and propounded to him this inquiry: "What did you discover as being wrong with her head on the 16th of July, 1889?" Plaintiff objected to the question, and the court excluded it, to which ruling the defendant duly excepted. The only conceivable ground for the rejection of the evidence is its assumed incompetency under section 834 of the Code of Civil Procedure, which forbids a physician or surgeon from disclosing "any information which he acquired in attending a patient." But section 836 provides that upon an express waiver by the patient the evidence becomes admissible; and the question is, does the record before us exhibit such waiver by the plaintiff? Although the statute prescribes an express waiver, the court of appeals has decided that it may be inferred from conduct; and that, by making an attorney witness to his will, a testator precluded his representative from objecting to the disclosure by the attorney of professional communications. *In re Will of Coleman,* 111 N. Y. 220, 19 N. E. Rep. 71. So, if a party, in his own behalf, testify to a confidential interview with his physician, his adversary may call the physician to contradict the story of the patient. *Marx* v. *Railroad Co.,* (Sup.) 10 N. Y. Supp. 159. In the latter case, so far from a disclaimer of his privilege, the patient strenuously asserted it on the trial; but, contrary to his express protest, the court raised a presumption of waiver.

The thing forbidden by the Code is the disclosure of professional information, and the policy of the enactment is to protect patients in the free revelation of their maladies to the physician. But what if, in order to enforce a claim against a stranger, the patient himself promulgates the information, and uncovers his maladies and infirmities in court, does he not thereby break the seal of secrecy, and absolve the physician from the obligation of silence? Does he not, in the strictest and most emphatic sense, waive his privilege? Is it to be tolerated that, to mulct another in damages, he may inflame a jury with a false or exaggerated story of his injuries and suffering, and yet the physician whom he has consulted is not to be allowed to prevent the meditated injustice by a truthful statement of the case? It is to be borne in mind, too, that here the physician was not called to reveal the ailments of the patient, but to prove that she suffered from no such injuries as she represented. Obviously respondent's contention is as inconsistent with the object and policy of the statute as it is fatal to the interests of justice. In *McKinney* v. *Railroad Co.,* 104 N. Y. 352, 10 N. E. Rep. 544, the court of appeals held that, when the condition of the patient is once disclosed with his consent, "it is then open to the consideration of the entire public, and the privilege of for-

bidding its repetition is not conferred by the statute;" declaring as the ground of its decision that, "the object of the statute having been voluntarily defeated by the party for whose benefit it was enacted, there can be no reason for its continued enforcement." In *Hunt* v. *Blackburn,* 128 U. S. 464, 470, 9 Sup. Ct. Rep. 125, the supreme court of the United States, by FIELD, J., said: "The privilege is that of the client alone, and no rule prohibits him from divulging his own secrets; and, if the client has voluntarily waived the privilege, it cannot be insisted on to close the mouth of the attorney." In *People* v. *Schuyler,* 106 N. Y. 306, 12 N. E. Rep. 783, the court of appeals say, *per curiam:* "The object of the statute was to prevent the disclosure by a physician of his patient's ailments and infirmities, and it may be queried whether it makes him incompetent to testify that his patient was free from disease of any kind. Can a party himself upon trial expose his ailments and make them the subject of inquiry, and then object that his physician shall tell anything he knows about them?" In *Marx* v. *Railroad Co.,* *supra,* the supreme court at general term in this department, per VAN BRUNT, J., say: "The patient may keep the door of the consultation-room closed, but he cannot be permitted to open it so far as to give an imperfect and erroneous view of what took place, and then close the door when the actual facts are about to be disclosed. * * * In construing this legislation, we must consider the object that was sought to be attained, viz., the greatest freedom in consultations with a physician. The reason for the rule no longer exists where the party himself pretends to give the circumstances of the privileged interview." Although the precise point now presented has not been adjudicated, we have no hesitation in ruling that the offered evidence was competent, and that it was essential error to exclude it. Judgment reversed, and new trial, costs to abide the event.