## LAWSON v. MORNING JOURNAL ASS'N.

(Supreme Court, Appellate Division, Second Department. June 21, 1898.)

1. LIBEL—EVIDENCE.

In an action for libel, based on a charge of plaintiff's insanity, evidence of the plaintiff's mental condition both prior and subsequent to the date of publication may be relevant.

2. WITNESS—PRIVILEGED COMMUNICATIONS—WAIVER.

Where, upon a material question, a party calls out testimony from his own physician concerning the party's physical condition at a given time, he thereby waives the professional privilege, and opens the door to a general examination of that subject so far as relevant and material.

Appeal from trial term.

Action by Jane Hussey against the Morning Journal Association. Verdict for plaintiff. Upon her death, Robert R. Lawson was appointed administrator. From the judgment entered on a verdict, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

B. F. Einstein, for appellant.
Hugo Wintner, for respondent.

HATCH, J. The action is to recover damages for an alleged libel. The libel consisted in an article published by the defendant, which charged the plaintiff with being insane. In substance, the publication stated that the plaintiff and two sisters were triplets, and that they had all become insane at about the same time. The article was published on the 13th day of December, 1893. The answer pleaded justification, and also matter in mitigation. It appeared upon the trial that the plaintiff was older than her two sisters, who were twins, by some 10 years; and there was no claim by the defendant that the article in respect of charging that three were born at the same time was true, or by plaintiff that it was libelous in this regard. It did, however, appear that the two sisters were confined in the Bellevue Hospital as insane persons; but the plaintiff had never been determined to be a lunatic, and was never confined in an asylum for lunacy.

Upon the trial an attempt was made by the defendant to establish not only matter in mitigation, but also in justification of the publication. This proof consisted of matter arising subsequent to the publication. The court excluded all such testimony, upon the ground that no matter occurring subsequent to the publication of the libel could be considered either as constituting a defense or as matter in mitigation; and in various forms such questions were presented throughout the trial, and the court consistently ruled that the whole should be excluded. In many respects, we think, the learned court, in making these rulings, fell into error. It is not at all essential that we review in detail all of the rulings made by the court, nor do we assert that all the rulings of the court in the exclusion of testimony

constituted error.   But, in the main, we think that all of the testimony having reference to the plaintiff and her connection with her sisters, together with her conduct, declarations, and letters written to the physicians having control of the hospital where the sisters were detained, should have been received and submitted to the jury, as bearing upon the question of the actual insanity of the plaintiff, and also, in so far as they were relevant, upon the good faith of the defendant in making the publication, and thereby having direct relation to the question of the mitigation of damages.

The plaintiff claimed that she did not visit the Bellevue Hospital, where her sister was confined, prior to the 23d day of December, 1893; but, for most of the period intervening between the time of the commitment of the sisters to the hospital and the 23d day of December, she was confined in the St. Johns Hospital, Long Isalnd, suffering from an attack of eczema.   In order to establish the fact of insanity, the defendant called Dr. Dewing, who was a physician connected with the hospital in which the sisters were confined; and he was asked if he saw the plaintiff and observed her mental condition in July, 1894.   He stated that he did.   He was then asked what he observed, and the answer was excluded.   He was then asked if, from his examination, he was able to determine if she was mentally affected, and how long she had been suffering in that way.   This was objected to and excluded, upon the ground of its all having occurred subsequent to the publication.   Similar questions were also propounded to Dr. Tracy; and, upon the cross-examination of the plaintiff herself, there was sought to be elicited a history of herself after the date of the publication.   All of these questions were excluded for the reason above stated.   It is entirely clear that the physicians who were called were experts in insanity, and competent to testify in respect to the subject-matter upon which they were called.   Answers to these questions might have tended to establish that the plaintiff was in fact insane at the time when the article in question was published; and if the physicians had so been permitted to testify, and had so testified, the jury would have been authorized to find, upon such testimony, that the plaintiff was in fact insane at the time when the article was published, and thereby would have been fairly established a justification of the alleged libel.   The gist of the complaint lay in the fact that the article charged that the plaintiff was insane, and such testimony would have tended to establish such fact.   It was therefore relevant, and its rejection was error. The same thing was true of the limitation placed upon the cross-examination of the plaintiff herself.   As the question of insanity was at issue, the defendant became entitled, upon cross-examination, to show the whole history of the plaintiff, both before and after the publication, and the development of such history would be relevant testimony from which the jury might have concluded that she was insane at the time when the publication was made.

The defendant also sought to prove the records of the hospital where the sisters were confined, and such records were excluded upon the ground that they were not sufficiently authenticated.   The ruling was error.   The subject-matter of this branch of the case

related entirely to matters in mitigation, and to establish the good faith of the defendant. Lloyd, who gave to the reporter of the defendant the matter from which the publication was made up, had not only received a detailed statement from the physician (now deceased) having charge of the sisters; but he had also examined the records of the hospital, and verified the statement which the physician had made to him. The relevant fact was whether the defendant had acted in good faith, and the offer to prove was that all of the sources of information upon which the publication was based had been exhausted. It was not a question of the establishment of the fact of insanity by the records themselves, upon which question authentication might be held essential in order to entitle them to be received in evidence; but it was solely upon the question of the effort which had been made by the defendant and the persons from whom it received its information to establish good faith in making the publication. Consequently, as the records were records of the hospital, and so admitted, as bearing upon such question it was perfectly competent to show that they were examined by Lloyd, who gave the information, and also to prove their contents in support of the good faith of the publication complained of. It was therefore error to exclude such records.

For the purpose of establishing that the plaintiff was confined in the St. Johns Hospital at a time when it was claimed that she was present at the Bellevue Hospital, Sister Mary David, who was in charge of the St. Johns Hospital, and Dr. Bumster, who was its attending physician, were called by the plaintiff. Both gave evidence in respect to the time when the plaintiff entered the hospital, and the length of time she remained, and the character of her malady; the object being to show that not only was she present in the hospital, but that she was suffering from a disease which prevented her from leaving it. It is quite clear, from an examination of the testimony of both of these witnesses, that sufficient time intervened, in which neither had the immediate supervision of the person of the plaintiff, to enable her to have left the hospital and visited the Bellevue Hospital, as claimed by the defendant. The question, therefore, of her illness as a preventive of such visit, became most material, and was so recognized by the plaintiff, as she gave evidence of its character both by the sister and by the doctor. Upon the cross-examination of the physician, counsel for the defendant asked with respect to the disease, and followed it up by asking, "What was the particular difficulty?" The witness refused to answer, upon the ground that he was not obliged to testify to matters of that kind. Thereupon counsel for the plaintiff interposed by statement that it was a privileged communication, in which the court acquiesced, ruling, "Even though he disclosed it in part, he isn't bound to disclose the whole," to which ruling the defendant excepted. It is perfectly clear that this ruling may not be sustained. The plaintiff herself had opened the door for an inquiry as to the physical difficulty from which she suffered. It was material testimony, as we have already observed, in consequence of which whatever privilege existed the plaintiff had waived, and the defendant became entitled to go into

the matter to the fullest extent, so far as the same was relevant and material.    Morris v. Railway Co., 148 N. Y. 88, 42 N. E. 410.

We do not deem it necessary to point out further errors in this case.    As to some of the matters excluded by the court, for the reason that the transaction was subsequent to the publication, the ruling may be upheld; but in the main, as we have already observed, the history and character and mental condition of the plaintiff were in issue; and upon such questions the defendant became entitled to a considerable latitude, as insanity is established by the acts and conduct of the person, as well as by the opinion of expert witnesses upon such subjects; and it was therefore not only proper, but desirable, that the jury should have laid before them all of the facts and the fullest history of the plaintiff herself in enabling them to correctly determine such questions.    As the plaintiff has died since the verdict, the action abates, and no new trial can be had.

The judgment should therefore be reversed.    All concur.