EDWARD J. O'BRIEN, Respondent, v. WESTERN
IMPLEMENT MFG. CO., Appellant.

**Kansas City Court of Appeals, February 7, 1910.**

1. **MASTER AND SERVANT: Assumption of Risk: Contributory Negligence: Relying on Foreman's Superior Judgment.** Plaintiff an eighteen-year-old boy was a workman of three years' experience in defendant's employ, constructing parts of cultivators. A change having been made in the quality of material furnished him, the work had to be done in a different way from the usual way. Plaintiff told the foreman that he did not think the new way safe, and the foreman showed him how it could be done and told plaintiff to go ahead. Plaintiff then undertook to do the work as directed by the foreman and was hurt. In the absence of proof that the risk of injury was so glaring that an ordinarily prudent person would decline to undertake it, the question of plaintiff's contributory negligence was for the jury.

2. **WITNESSES: Physicians: Waiver of Privileged Communications.** Where two physicians have treated a patient for the same cause and he calls one as a witness, he thereby waives his right to object to the testimony of the other on the ground of privileged communication.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED.

*Warner, Dean, McLeod & Timmonds* for appellant.

(1) The court committed error in overruling defendant's demurrers to the evidence, and in refusing its peremptory instruction directing a verdict in its favor. Meyers v. Glass Co., 129 Mo. App. 556; Marshall v. Hay Press Co., 69 Mo. App. 256; Hicks v. Railroad, 46 Mo. App. 304; Cox v. Granite Co., 39 Mo. App. 424. (2) The verdict is excessive. Notwithstanding plaintiff had two physicians—a woman and a man—he only used the woman as a witness and objected to defend-

ant's using the man, and that objection was by the court sustained. But a reading of all the testimony in behalf of plaintiff, including that of his woman physician, forces the conclusion that he was not hurt twelve hundred dollars worth. There is no allegation of loss of time, nor any proof of value of services. The testimony of his woman physician, attributing his convulsions, in April, 1907, to the stroke on his hand in July, 1906, notwithstanding she could discover nothing the matter with the hand, and her testimony that the pain would run up the left hand to the heart, and down to the stomach, is incredible and unworthy of belief, even though an "array of witnesses" might testify thereto. Weltmer v. Bishop, 171 Mo. 116. In this connection, see, also, the following cases: Champagne v. Hamey, 189 Mo. 726; State v. Huff, 161 Mo. 487; State v. Francis, 199 Mo. 671; Wray v. Electric Light Co., 68 Mo. App. 389. (3) The court committed error in the admission and the exclusion of testimony. Under this point, we shall call attention to such additional rulings as we deem erroneous, specifying them separately, under alphabetical headings, as A, B, C, etc. (4) An employer is not an insurer of the safety of his appliances; he is required only to exercise ordinary care to provide reasonably safe appliances. Bennett v. Lumber Co., 116 Mo. App. 699; Hester v. Dold Packing Co., 84 Mo. App. 454; Elliott v. Railroad, 67 Mo. 274; Covey v. Railroad, 86 Mo. 641; Pavey v. Railroad, 85 Mo. App. 221; Current v. Railroad, 86 Mo. App. 62; Breen v. Cooperage Co., 50 Mo. App. 202; Howard v. Railroad, 172 Mo. 531; Brewing Co. v. Talbot, 141 Mo. 674; Curtis v. McNair, 173 Mo. 270; Trigg v. Sand Co., 187 Mo. 227.

*W. F. Zumbrunn* for respondent.

(1) The appeal should be dismissed for the reason that the affidavit of appeal was made by Judge Timmonds, one of the attorneys for the appellant, and

the affidavit for appeal attested by Mr. Langworthy, as notary public, one of the attorneys for the defendant. Smith v. Ponath, 17 Mo. App. 262; State v. Noland, 111 Mo. 473. (2) If an affidavit for an appeal is made before an attorney for appellant it is an irregularity that is fatal unless waived, and the appellee elects not to waive his right. Smith v. Ponath, supra; State v. Noland, supra. (3) Again, the verdict is for the right party. It was negligence *per se* to place the plaintiff to work between fixed or traversing parts of machinery operated by steam, the plaintiff being a minor, and it was in contravention of section 6434, Revised Statutes 1899; and the defense of assumption of the risk and contributory negligence cannot prevail where the master, in the face of a positive statute and against the strict mandate of statute, puts a minor to work. Blair v. Heibel, 103 Mo. App. 621; Stafford v. Adams, 113 Mo. App. 717. (4) Defendant's demurrers to the evidence at the close of plaintiff's case, and to the evidence at the close of the whole case were properly overruled. R. S. 1899, sec. 6434; Blair v. Heibel, supra; Lore v. M'fg. Co., supra; Stafford v. Adams, supra; Nairn v. National Biscuit Co., supra. (5) The minute that a servant entertains fear of safety and protests to his employer, who assures him that the work is safe and directs him to return to work, just that minute is the responsibility shifted from the servant to the master. Halliburton v. Railroad, 58 Mo. App. 27; Thorpe v. Railroad, 16 S. W. 206; Curtis v. McNair, 173 Mo. 270; McGowan v. Railroad, 61 Mo. 528; Doyle v. Trust Co., 140 Mo. 41. (6) It is the master's duty to furnish the servant with reasonably safe and sufficient machinery and appliances to do the work required, and if the master neglects his duty in this respect he will be liable to the servant for any injury growing out of such failure. Craig v. Railroad, 54 Mo. App. 523; Gibson v. Railroad, 46 Mo. 163; O'Niel v. Young & Sons, etc., 58 Mo. 628; M'Cready v. Stepp, 104 Mo. App. 340; Beard

v. Car Co., 73 Mo. App. 583; Sield v. Railroad, 82 Mo. 430; Porter v. Railroad, 71 Mo. 76.

BROADDUS, P. J.—This suit is to recover dam ages, for injuries plaintiff received because of failure on the part of defendant, to furnish him with a reasonably safe appliance with which to do his work.

The plaintiff was eighteen years of age at the time of the alleged injury and had been in defendant's employ for three years, during which time he had been engaged in drilling holes in castings and tapping them so that they could be bolted onto cultivators, which defendant was engaged in manufacturing. The manner of drilling the holes was to place the casting in what was called a "jig" which held the casting to a plate underneath the drill. The holes were drilled through the casting by a drill press operated by steam. When the holes were drilled, they were tapped, that is had threads cut into them.

Plaintiff testified that he knew how and had been engaged in tapping the castings about a year before he was injured; that previously he had been engaged in drilling, and that his experience in that work had qualified him to do the work of tapping. The two kinds of work were done by the same machine. The difference was that in drilling a bit was used, that made a smooth hole through the casting, while in tapping a tap was used to cut threads on the inside of the smooth hole. He further testified that generally these castings were held in place while being drilled or tapped by a jig; that he was put to work on the 15th day of July, 1906, tapping without the use of a jig to hold the casting in place; that these castings were much harder than those he had formerly drilled or tapped; that in dispensing with the jig the person operating the machine had to hold the castings in place with his hands; that he told the foreman that he did not consider it safe to do the work in that manner, but that the foreman told

him that it was perfectly safe, and showed him how and tapped several castings. In answer to a question he said: "I knew when I tried to drill them that they were very hard; I went to him (the foreman) before I tapped them when he gave me orders to tap them, and told him that I was afraid of them, that they were very hard in drilling them and I didn't think they could be tapped. He says, 'I can do it,' and he stood there and tapped three of them—one of them got away from him, he tried another and it was all right. He says, 'Go ahead, you can do it, it is all right,' and I tried to." The plaintiff stated that there was a jig in the shop, but that it was not suitable on account of a change in the manner in which the holes were drilled in the castings, and because it was not strong enough. Then he was asked if he had informed the foreman of that fact, and he answered yes. "Q. What did he say to you, if anything? A. He says, I will show you, we can do it with our hands. Q. What reply did you make to him if any? A. I said I wouldn't do them first, that I wanted to see, I didn't think they could be did that way. Q. What do you mean by *that way*? A. Holding them with his hands."

Plaintiff then began work and tapped one successfully, but the second one he essayed flew out of his hands. His description of the manner it acted was: "The casting got away from me, and before I could get away from it, it hit me three times, hit me on the hand, and I stumbled in trying to get away from it, then it hit me on my chest and stomach."

Plaintiff's statements showed that he was an experienced workman in the work in which he was engaged.

Plaintiff had two physicians attending his injuries, one of whom he introduced who testified as to such injuries. The defendant called the other, Dr. Hassig, and offered to prove by him the condition of plaintiff's injuries at the time. Upon objection by plaintiff the

witness was excused on the ground of his incompetency.

The defendant offered a demurrer to plaintiff's case which the court overruled. The jury returned a verdict for plaintiff for twelve hundred dollars and defendant appealed from the judgment.

The defendant's counsel has argued with much ingenuity and ability that the plaintiff ought not to recover because it was shown that he was as well acquainted with the manner of doing the work as the foreman and that his undertaking was with a full knowledge of the attendant danger.

As a matter of fact the evidence is rather convincing that the plaintiff did recognize the difficulty of operating by holding the casting in his hand, and that the sequel showed that his judgment in that respect was superior to that of his foreman. But that fact alone does not show that he assumed the risk. His judgment told him that the work was impracticable and before he would undertake it he required that the foreman should demonstrate that it could be done in the manner proposed. The foreman's experiment was apparently successful and he told plaintiff that he could do the work and to go on with it.

We think at least that the circumstances tended to exonerate plaintiff from the charge of culpability. It was for the jury to say under the facts whether the danger was so glaring, as a man of ordinary prudence in the exercise of reasonable care would have assumed the risk. This is the rule by which the act of the servant is to be measured in determining the question of the liability of the master for injuries received by the servant while in the performance of his duties. And whereas the servant always assumes the risk incident to his employment, the rule is almost universal that the servant does not assume the negligence of the master who fails in his duty to furnish the servant with reasonably safe instrumentalities to perform his work. Un-

der the facts, having these cardinal rules in view, we are forced to the conclusion that plaintiff was entitled to go to the jury and that defendant's demurrer to his case was properly overruled.

The question is raised as to the ruling of the court in excluding Dr. Hassig as a witness to prove the condition of plaintiff's injuries. Having introduced one of his physicians to prove the condition of his injuries the plaintiff waived the privilege of the statute. It is universally held that this being a personal privilege may be waived. In Elliott v. Kansas City, 198 Mo. 593, the court in passing upon the question, held that where the privilege of the statute has once been waived it could not be withdrawn. Plaintiff's assumption is that notwithstanding the privilege was withdrawn by the introduction of one of his physicians it was not waived as to the other. His position is not tenable. In the above case the court quotes with approval the holding in Morris v. Railroad, 148 N. Y. l. c. 92; 93. It is there held that when the privilege was once waived it ceased to exist. It is there said: "When a waiver is once made it is general and not special, and its effect cannot properly be limited to a particular purpose or a particular person. After the information had once been made public no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect, by its repetition at another time or by another person."

Appellant urges upon the attention of the court certain errors committed in the admission of testimony. Upon examination we find that the objections are extremely critical as well as technical.

It is claimed that the injuries plaintiff suffered were trivial and the amount of the verdict excessive. As there will be another trial it is not necessary and it would be unavailing to discuss that matter at this time. For the reason given the cause is reversed and remanded. All concur.