JOHN B. CROSS, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 14, 1915.

1. NEGLIGENCE: Railroads: Federal Employer's Liability Act. The plaintiff sued to recover damages from defendant, for the negligent placing of a piece of "scrap" or "junk" rubber hose, so that when plaintiff descended a ladder on which he had been working cleaning an engine he stepped upon it thereby severely spraining his ankle. *Held*, that defendant's demurrer to the evidence was properly overruled.

2. ————: Federal Employer's Liability Act. The Federal Employer's Liability Act abrogates the rule regarding contributory negligence and merely permits such negligence to diminish the damages.

3. ————: ————: Assumption of Risk: Federal Rule: Missouri Rule Under the Federal Rule Concerning Assumption of Risk. When the employee knows of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer, or his representative, an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. Such, however, is not the Missouri rule.

4. INSTRUCTIONS: Damages, Measure of. An instruction on the measure of damages regarding the contributory negligence

of plaintiff which states: "Then such damage should be diminished by the jury in proportion to the amount of negligence attributable to him, as compared with the negligence, if any, attributable to the defendant" is erroneous.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED AND REMANDED.

*Bailey & Hart, J. C. Carr* and *M. G. Roberts* for appellant.

*Bresnehan & West* for respondent.

TRIMBLE, J.—Respondent was employed in appellant's roundhouse at Brookfield, Missouri. When not engaged in operating the turntable, his duty was to wipe engines. In doing this a ladder was used on which to ascend and descend from the engine; and perhaps the employee stood on the ladder at times during the wiping process.

While thus working on an engine, he received a signal to go at once to the turntable. He descended the ladder and, in stepping from the last rung to the ground, his right foot trod upon a piece of hose three or four inches in diameter lying on the ground, whereby his ankle was turned and badly sprained. This suit for damages resulted, in which it was charged that the defendant was negligent in placing and permitting said piece of hose to remain on the ground at a place much used by employees in working about said engines whereby said place was rendered dangerous and unsafe.

The petition alleged, and the evidence showed, that the defendant was an interstate common carrier by railroad and that plaintiff was in its employ and engaged in interstate commerce at the time. The suit is therefore under the Federal Employer's Liability Act (35 Stats. at Large, p. 65, ch. 149, as amended by Act of April 5, 1910, 36 Stats. at Large, p. 291, ch.

143). The answer pleaded contributory negligence and assumption of risk.

In view of the verdict in plaintiff's favor, we must accept the evidence in plaintiff's behalf at its full face value, and it shows that the hose on which plaintiff stepped was a piece of "scrap" or "junk" hose about six or seven feet in length. It had been used in "blowing out" engines but had been run over and cut off, so that it was no longer fit for use but should have gone to the scrap heap. It was lying on the ground at the side of the engine on which plaintiff was at work and had been lying there for several days. The evidence further shows that defendant's rules required the foreman to see that the house was kept clean and in good order and that the workmen performed their duties properly. He had under him five men whose duty it was to "pick up all material and everything in the roundhouse and sweep the floors every day and clean up" and it was the duty of these men, if there was a piece of scrap hose lying on the ground, to pick it up and put it on the scrap pile. While there was evidence that the hose used in blowing out an engine was attached to a hydrant midway between two engines in their stalls, and that such hose lay on the ground until the blowing out process was over, yet the evidence was that as soon as the process was over, the hose was taken off to another engine; it was not allowed to remain on the floor indefinitely. Nor is there any evidence that during the time the hose was in use it was lying close to the engine where the wipers worked; but there was evidence that the piece of scrap on which plaintiff stepped "had been thrown back there," that is, close to the engine-side where it was trod upon by plaintiff when he stepped from his ladder.

From the foregoing resume of the evidence in plaintiff's behalf, we think it clearly appears that there was sufficient evidence to support a finding that defendant was negligent in allowing the piece of scrap

hose to lie so long on the ground at a place where the employees walked. [Johnson v. Kansas City Bolt & Nut Co., 172 Mo. App. 214.]

This brings us to the matters raised in defendant's answer, namely, contributory negligence and assumption of risk. With regard to contributory negligence, the Employer's Liability Act abrogates the rule which allows it to bar a recovery, and merely permits such negligence to diminish the damages. [See Sec. 3 of said act.] But said act leaves the rule of "assumption of risk" still in force except in the case of a violation by the carrier of a Federal statute. So that if plaintiff in this case was guilty of contributory negligence that will only result in a diminution of his recoverable damages. But if he assumed the risk it will defeat his recovery entirely.

Upon this branch of the case the evidence of plaintiff indisputably shows that the piece of scrap hose had been lying, where plaintiff stepped on it, for several days. Plaintiff admitted that he had seen this particular piece of hose there several times; he had seen it for several days and knew it was lying there; that he himself set the ladder right down by the hose; that the injury occurred about three o'clock in the afternoon of October 13, 1913, and he could have seen the hose as he came down the ladder if he had looked for it.

It would seem that the act of plaintiff in setting the foot of the ladder down close by the scrap of hose he knew was there, and which he could have easily kicked out of the way, and his act in coming down the ladder and stepping off to the ground without looking where he stepped, would constitute contributory negligence, since these were positive, affirmative acts on his part together with the neglect or omission to observe care for his own safety, and that these acts without care—i. e. negligence—"contributed" to his injury, that is, it joined with the negligence of defendant in bringing it about. If now it was contributory neg-

ligence and nothing more, then plaintiff's right to recover is not defeated but his damages are reduced.

But, if plaintiff occupied a broader status and if, by reason of his knowledge of the long continued presence of the hose-scrap, of which he never complained, he assumed the risk of injury arising therefrom, then his right of recovery is defeated. In which category is plaintiff to be placed in this case?

It would seem that the answer to this question would all depend upon what is considered as constituting assumption of risk. If we regard that rule as meaning that plaintiff, knowing of the defect and appreciating the danger, assumes the risk thereof even though the defect arises from the defendant's negligence, then perhaps plaintiff should be held to have assumed the risk in this case. But if we follow the rule that plaintiff does not assume the risk of a defect arising from defendant's negligence, then plaintiff should be said to have been merely guilty of contributory negligence.

The rule that a servant assumes the risk even of those dangers arising out of the master's negligence provided the servant knows of and appreciates them and he continues to work without complaint, is the one adopted by the Federal courts. [Seabord Air Line Railway v. Horton, 233 U. S. 492, 1. c. 504-5.] Justice PITNEY here says, "But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." . . . "When the employee does know of the defect, and appreciates the risk that is attributable to it, then

if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty." [See, also, Texas Pacific R. Co. v. Archibald, 170 U. S. 665; Choctaw & Gulf Ry. Co. v. McDade, 191 U. S. 64, l. c. 68; Schlemmer v. Buffalo, etc., R. Co., 220 U. S. 590, l. c. 596; Gila Valley, etc., R. Co. v. Hall, 232 U. S. 94, l. c. 102.]

But this is not the rule in Missouri. [George v. St. Louis, etc., R. Co., 225 Mo. 364, l. c. 407; Clippard v. St. Louis Transit Co., 202 Mo. 432, l. c. 446; Jewell v. Kansas City Bolt & Nut Co., 231 Mo. 176; King v. St. Louis, etc., R. Co., 143 Mo. App. 279, l. c. 298; O'Brien v. Western Implement Co., 141 Mo. App. 331.]

Hence the question arises which of these two rules concerning assumption of risk shall be applied in this case wherein the rights of litigants, under a Federal law, are to be adjudicated? In the above case of Seaboard Air Line Railway v. Horton, 233 U. S. 492, l. c. 507, it is said that the Employer's Liability Act, where none of the Federal Safety Acts are involved, leaves the matter of assumption of risk "open to the ordinary application of the common-law rule." What does this mean? Does it mean the common-law rule as determined by the courts of the various States or the common law as interpreted by the Federal courts? It would seem that since the Employer's Liability Act is a general law enacted by Congress to regulate the responsibility of interstate common carriers by railroad to their employees engaged in carrying on commerce between the States, the purpose of Congress was to establish one general uniform law in that regard, and that, therefore, not only the construction of that Act by the Federal courts but the rules of decision adopted therein in applying and enforcing the Act, should be binding upon the State courts. It is so held in regard to the liability of an interstate common carrier to an

interstate shipper for loss of goods created by the Interstate Commerce Act. [Adams Express Co. v. Croninger, 226 U. S. 491; Missouri, etc., R. Co. v. Harriman, 227 U. S. 657.] And similarly, in cases under the Federal Employer's Liability Act, it would seem that the rights of the employee and employer should be construed in the light of the Federal decisions. And such seems to be the holding in other States. In Southern Ry. Co. v. Jacobs, 81 S. E. 99, the Supreme Court of Virginia followed and applied the Federal rule in regard to assumption of risk instead of the rule in Virginia in that regard. In Freeman v. Powell, 144 S. W. 1033, the Texas Court of Appeals adopted the Federal view as to assumption of risk in direct opposition to the State rule on that subject, the court saying on page 1035: ''Congress has undertaken to define the relative rights and liabilities of railway companies and their employees engaged in interstate commerce, and we do not think we have power to add to the Act of Congress by engrafting thereon an exception to the consequences that must ordinarily flow from appellee's undisputed knowledge of the defect and negligence complained of in this suit.'' In Glenn v. Cincinnati, etc., R. Co. 157 Ky. 453, the same rule concerning assumption of risk was applied though doubtless that was also the rule in that State. The same may be observed of the case of Farley v. New York, etc., R. Co., 91 Atl. (Conn.), 650. [See, also, Hardwick v. Wabash Railroad Co., 181 Mo. App. 156, l. c. 160.]

It is true, with the exception noted in Smith v. Alabama, 124 U. S. 465, l. c. 478, there is no Federal common law. Nevertheless, the Federal courts determine for themselves what the common law is. And this is especially true when they are passing upon *matters of general law* in which case they do not feel called upon to accept the views of State courts, but exercise an independent judgment even as to what is

or is not the true rule of the common law; and certainly the question of the responsibility of an interstate railroad to its servants engaged in interstate commerce is one of general law. [Baltimore, etc., R. Co. v. Baugh, 149 U. S. 368, 1. c. 370 and 371.]

It is no doubt true that in many cases the Federal courts and the State courts are independent of each other in their views of what the common law is. And in those cases where the Federal courts lean toward the construction or rules adopted by the State courts or apply State laws, it will be found that the right or cause of action involved arose out of the law of the particular State involved. Such for example, was the case of Federal Lead Co. v. Swyers, 161 Fed. 687. The court in this case intimated that if the highest court in the State had construed a statute as taking away the defense of assumption of risk, it might have followed such construction. But the case involved merely a cause of action arising in the State; it did not arise under a Federal law affecting a general right applicable to all persons within the States coming within the limits of commerce affecting them all. And while the State courts, in passing on matters of purely State concern, are independent of the National courts in their view of what the common law is, yet it is hard to see how a State court, when called upon to apply and enforce a Federal statute, can disregard the rules of decision in regard thereto laid down by the Federal courts and follow its, the State court's, own rules not in harmony therewith. If it can, then the responsibility of an interstate carrier to its employees in interstate commerce will vary according to the view the various States may take of the common-law rule concerning assumption of risk. But Congress sought to *regulate* this responsibility, and having acted in the matter, it established a policy for all, and the liability as determined by the several States is superseded by

191M.A.14

this one general supreme law. [Second Employer's Liability Cases, 223 U. S. 1.] In the above-mentioned case of Seaboard Air Line Railway v. Horton, 233 U. S. 492, l. c. 502, it was held that the phrase "any statute enacted for the safety of employees" in section 4 of the Act, meant any Federal statute. It would seem that when the court said the Act left the matter in respect to assumption of risk "open to the ordinary application of the common-law rule," it meant the common-law rule as enforced by that court and the other Federal courts following it. And those courts hold that if the danger is known to the employee, he assumes the risk even if it arises out of the master's negligence. [Boldt v. Pennsylvania R. Co., 218 Fed. 367; Seaboard Air Line Railway v. Horton, supra.]

However, in the case of Fish v. Chicago, etc., R. Co., 172 S. W. 340 (not yet published in the official State reports), a case under the Federal Employer's Liability Act, our State Supreme Court held that the meaning and effect of the United States Supreme Court decision in the Horton case, supra, wherein it said the matter was left "open to the ordinary application of the common-law rule" meant the common law as interpreted and enforced in the respective States. At page 345 the court say: "The effect of that decision and of the Act construed therein, and of the previous decision of the Supreme Court devolving concurrent jurisdiction upon the courts of the several States to enforce the provisions of said Act, is to require them, in passing on the defense of assumption of risk, to apply as a standard the common-law rule on that subject. This points a plain pathway—that of the common law as adopted, interpreted, expounded, and enforced in the respective States." The court then goes on to show that the common law, as administered in Missouri with regard to assumption of risk, is that the servant does not assume the dangers or perils caused by the negligence of the master, and that when the injury

is caused by a peril created by the negligence of the master, the only defense is that the peril was so great that no reasonable man could hope to escape by reasonable care; in which event the servant would be guilty of contributory negligence. It is true the petition alleged in that case that the servant did not know of the dangerous proximity of the standpipe to the track, but the proof was that he was notified there was some danger from its location. But even if the facts were that the servant in that case did not know of the defect or the peril, still the holding of the court is plain that the Missouri rule as to assumption of risk will be applied, and we defer to that holding. In Hawkins v. St. Louis & San Francisco Ry. Co., 174 S. W. 129, the Springfield Court of Appeals, following the Fish case, announced the same view, though clearly, in that case, the facts did not violate the rule of the Federal courts as to assumption of risk since the servant did not know of the presence of the jack over which he fell.

The right sought to be enforced herein is a right under a Federal law, which gives jurisdiction to State courts to try such cases, with an appeal or rather writ of error lying to the United States Supreme Court from the judgment of the court of last resort having jurisdiction where the action was instituted. [Missouri, etc., R. Co. v. Elliott, 184 U. S. 530; Gulf, etc., R. Co. v. McGinniss, 228 U. S. 173.] It does not seem that, in a suit under a general Federal law intended as a uniform regulation affecting carriers and its employees engaged in interstate commerce, a State court will be allowed to apply its own particular rule which is not in harmony with the Federal rule. Especially does this appear to be so when a writ of error can be taken to the Federal court of last resort whose duty it will be to apply and enforce a general Federal law having to do with such an exclusively Federal subject as interstate com-

merce. It is not apprehended that, in such case, the United States Supreme Court will abandon its rule as to assumption of risk and apply the State rule. It is doubtless true, as suggested in the Hawkins case, supra, that the Bankrupt Law is intended to be uniform and yet State laws with regard to exemptions and fraudulent conveyances are enforced by the Federal courts. It will be noticed, however, that none of these laws are in conflict with Federal laws or rules of decision; and the causes of action affected by them are rather of local origin and scope and do not involve such general matters as those affecting interstate commerce.

We defer, however, to the views of our State Supreme Court on the matter in question and are thus relieved of the necessity of deciding whether the Federal or the Missouri rule as to assumption of risk should be followed in a case under the Employer's Liability Act, or whether there is any room herein for the application of the Federal rule. So that without regard to whether plaintiff's course of conduct in this case be merely contributory negligence, or whether it did not also amount to an assumption of risk under the Federal rule since he clearly knew of the hose, its location and the danger arising therefrom, we hold that the trial court properly overruled defendant's demurrer to the evidence.

Plaintiff's instruction on the measure of damages told the jury that in case they found the plaintiff guilty of contributory negligence, "then such damages should be diminished by the jury in proportion to the amount of negligence attributable to him, as compared with the negligence, if any, attributable to the defendant." This is erroneous. [Norfolk, etc., R. Co. v. Earnest, 229 U. S. 114, l. c. 122.] The Supreme Court says that the statute means that where the negligence causing the injury is partly attributable to the employee and partly to the carrier "he shall not recover full

damages but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.'' The above instruction is also held erroneous in Nashville, etc., R. Co. v. Banks, 161 S. W. 554. We cannot say the error was not prejudicial since we have no means of knowing the comparisons of negligence made by the jury. Whether this above instruction would be more favorable to defendant or not depends upon the relative amount of negligence the jury charged against the parties. For instance, suppose the full amount of damages was $2000 and the jury thought the negligence to be charged to the plaintiff should be stated at two and the defendant's at eight. In that case plaintiff's negligence, according to the instruction, would be one-fourth as much as defendant's while according to the correct rule, it would be one-fifth of the whole damage. In that event the instruction would be more favorable to defendant than would the correct rule, since, under the instruction the full damages $2000, would be diminished by one-fourth or $500 leaving plaintiff's verdict to be $1500 while under the correct rule the $2000 would be diminished by one-fifth or $400 leaving the verdict $1600. But suppose the jury thought the negligence of the plaintiff was eight and that of the defendant two, then, under the instruction, plaintiff's negligence would be three-fourths, while according to the correct rule it would be fourth-fifths. In such case, under the instruction, the $2000 would be diminished by $1500 leaving $500 as the verdict, while under the correct rule, the $2000 would be diminished by $1600 leaving plaintiff's verdict at only $400. So that it all depends on where the jury places the greater negligence as to whether the instruction as given is favorable or unfavorable to defendant. Hence we cannot say the instruction was harmless. For this reason the judgment is reversed and the cause remanded. All concur.