[L. A. No. 4264.    In Bank.—July 31, 1919.]

FANNIE HIRSCHBERG, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] Negligence — Evidence — Physician and Patient—Information Acquired by Physician Before Injuries—Testimony of Plaintiff and Physician as to Injuries—Privilege not Waived.—In an action for damages for personal injuries sustained by the plaintiff at the hands of an employee of a railroad company, the plaintiff did not, in view of section 1881, subdivision 4, of the Code of Civil·Procedure, as it read prior to the abrogation of the privilege in such class of cases in the year 1917 (Stats. 1917, p. 954), waive the ban of privilege as to information acquired by a physician in attending her several years prior to the injuries in question, because she and her physician testified fully as to her condition after the assault.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Curtis D. Wilbur, Judge.    Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage, W. I. Gilbert and C. F. Cable for Appellant.

Peyton H. Moore and E. B. Drake for Respondent.

LAWLOR, J.—This is an appeal from a judgment of the superior court of the county of Los Angeles in an action for damages for personal injuries, in which .the plaintiff was awarded the sum of three thousand five hundred dollars, with costs amounting to $524.95.    The complaint alleges that ·the injuries were sustained by the plaintiff at the hands of an

employee of the defendant company. The case was tried by jury, and judgment was given by the court for the amount of the verdict. A motion for a new trial was thereafter interposed and denied. The record contains a statement on motion for a new trial settled and allowed by the court.

It appears that the plaintiff has resided in Los Angeles since July 27, 1910. On August 5, 1910, the plaintiff, accompanied by her son, went to the station of the defendant company in Los Angeles for the purpose of securing certain baggage belonging to her and her family. The baggage agent presented a statement of excess charges for payment before releasing the baggage. Plaintiff's son questioned the correctness of a certain item of twenty-five cents, and an altercation ensued, during which, plaintiff alleged, the baggage agent assaulted her by seizing her right arm and throwing her violently and forcibly against the stone floor, causing her jewelry to be driven into the flesh of her chest, "bruising and lacerating the same and breaking the bones thereof." It is further alleged that she was "severely and permanently injured in the lower abdominal region, and especially plaintiff's uterus was misplaced, torn, crushed, and bruised, and her female functions were interfered with, and she has been caused to be sick, sore, and lame therefrom ever since"; and further, that her left knee and right arm were severely sprained, her back wrenched, her face and head bruised, "and that her body became sick, sore, and disordered."

The only question presented for consideration on this appeal is whether the trial court erred in excluding the deposition of Dr. Emery Marvel of Atlantic City, New Jersey, which was offered by the defendant.

From the record it appears that the deposition was objected to by the plaintiff on the ground that the examination called for information acquired by Dr. Marvel while attending the plaintiff as a physician within the meaning of subdivision 4, section 1881, of the Code of Civil Procedure, and that the ruling of the court was based upon that conceded fact. It also appears that, while the deposition was taken upon the stipulation of the parties, it was taken "subject to all objections and exceptions, as if the said witness were personally present on the stand, but without objection to the time or place of taking the same. It being expressly agreed that plaintiff by this stipulation does not in any way

waive the right to object to the introduction in evidence of all or any part of the testimony of Dr. Marvel on the ground that the same is privileged.''

The appellant contends that the deposition of Dr. Marvel was admissible upon two grounds: ''First: Mrs. Hirschberg by her own testimony and by disclosures made with her consent by her physician waived any right which she may have had to the exclusion of the testimony of the physician. Second: She testified that Dr. Emery Marvel was not her physician, and that he had never treated her for any disease except that of lumbago. If he was not her physician, then certainly she could not object to his testifying in the case. In other words, if she claimed the privilege of excluding the communications between Dr. Marvel and herself from the consideration of the jury she could only do so upon the theory that he was her physician. She could not deny that the relationship existed, and in the same breath claim his testimony could not be offered because it was a privileged communication.''

The plaintiff testified on direct examination that as a result of the injury she sustained a displacement of uterus, and that ''before the trouble I was a healthy woman.'' On cross-examination she was asked if in the years 1902, 1904, and 1907, at Atlantic City, New Jersey, she was not treated by Dr. Marvel for a displacement of her uterus. Her answer was flatly in the negative; she stated, however, that he had once treated her for lumbago.

On direct examination, Dr. Adolph Tyrola, plaintiff's personal physician, who treated her for the first time after the injury and was called in her behalf, described in minute detail the condition of the organs of the pelvic region, including a displacement of the uterus. He testified on cross-examination that ''she did not tell me that the entire displacement resulted from the fall. . . . My opinion in this case is that the displacement began several years ago, long prior to my first examination.''

In view of the delicate nature of much of the testimony touching the physical condition of the plaintiff, and the fact that the only question reserved for appeal is that of privilege, we do not think it necessary to make a more extended reference to such testimony.

Section 1881 of the Code of Civil Procedure, as it was written at the time this action arose, reads as follows: "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: . . . 4. A licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient: . . ."

The purpose of the privilege "is to facilitate and make safe, full, and confidential disclosures by patient to physician of all facts, circumstances, and symptoms, untrammeled by apprehension of their subsequent enforced disclosure and publication on the witness-stand, to the end that the physician may form a correct opinion, and be enabled safely and efficaciously to treat his patient." (*In re Bruendl's Will*, 102 Wis. 45, [78 N. W. 169].) The privilege is personal to the patient and may be waived by him. (*Lissak* v. *Crocker Estate Co.*, 119 Cal. 442, [51 Pac. 688].) What constitutes a waiver is stated in 40 Cyc. 2399, as follows: "The privilege is waived whenever the person entitled to the protection of the statute voluntarily makes public matters of which a disclosure without his consent is forbidden, and so where the client or patient voluntarily introduces evidence of communications between himself and his physician the privilege is waived and the attorney or physician may testify in respect thereto."

It has been held that if a patient offers the testimony of one of several physicians attending the case at the same time, or who were present at a consultation, the privilege has been waived, so that the testimony of all of them will be received. (*Morris* v. *New York etc. Ry. Co.*, 148 N. Y. 88, [51 Am. St. Rep. 675, 42 N. E. 410]; *O'Brien* v. *Western Implement Mfg. Co.*, 141 Mo. App. 331, [125 S. W. 804], and cases there cited.) And likewise where different physicians have treated the patient at different times for the same injury and the patient calls one of the physicians to testify, it has been held that this constitutes a waiver as to all the physicians. (*Lawson* v. *Morning Journal*, 32 App. Div. 71, [52 N. Y. Supp. 484]; *Lampel* v. *Goldstein*, 167 N. Y. Supp. 576; *State* v. *Long*, 257 Mo. 199, [165 S. W. 748]; *Priebe* v. *Crandall* (Mo. App.), 187 S. W. 605.) However, there is authority

to the contrary. (*Dotton* v. *Albion,* 57 Mich. 575, [24 N. W. 786] ; *Baxter* v. *Cedar Rapids,* 103 Iowa, 599, [72 N. W. 790] ; *Mellor* v. *Missouri Pac. R. Co.* (Mo.), 14 S. W. 758; *Hope* v. *Troy etc. R. Co.,* 110 N. Y. 643, [17 N. E. 873] ; *Mays* v. *New Amsterdam C. Co.,* 40 App. D. C. 249, [46 L. R. A. (N. S.) 1108] ; *Slater* v. *Sorge,* 166 Mich. 173, [131 N. W. 565].)

But it is to be noted that in the foregoing cases it was sought to admit the testimony of physicians who attended the patients *after* the injury complained of, and who, according to the testimony of the patients themselves on direct examination, had been consulted or had given treatment for the *same* injury. Such is not the case here. The testimony of Dr. Marvel purported to cover information acquired by him while attending the plaintiff as her physician several years before. And in the presentation of the case for the plaintiff the treatment by Dr. Marvel was in no way referred to, but, as already stated, the fact was developed at the trial on the cross-examination of the plaintiff. Dr. Marvel did not examine or treat the plaintiff after the assault. This question, so far as we are able to find, has never been passed upon in this state. However, the case of *Missouri & N. A. R. Co.* v. *Daniels,* 98 Ark. 352, [136 S. W. 651] , decided in 1911 by the supreme court of Arkansas, is so clearly analogous in its facts and presents so concisely the exact point of law here involved that we will quote from it at some length.

The action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of a conductor of the defendant railroad company. It was alleged that the plaintiff had been thrown from the steps of a passenger-coach to the floor of the station platform, that as a result of the fall she had suffered a prolapsus of the uterus and that the injury was so severe that an operation was necessary. To prove the seriousness of her condition after the accident, she called Dr. Fowler, her attending physician, as a witness. We quote from the opinion :

". . . During the progress of the trial the defendant introduced two physicians who had attended on the plaintiff about two years prior to the time of the alleged injury, and offered to prove by them that she had sustained a displacement of the womb at that time, and had suffered from that

trouble long prior to the date of the alleged injury. The plaintiff objected to the admission of this testimony, and her objection was sustained by the court. It is conceded by the defendant that the information which the testimony of these witnesses would have disclosed was acquired by them while attending the plaintiff as physicians; but it contends that the evidence was admissible because the plaintiff had waived her right to object to the introduction of any testimony relative to her condition by reason of having herself introduced the testimony of Dr. Fowler, above referred to.

"It is provided by section 3098, Kirby's Digest, that 'no person authorized to practice physic or surgery, and no trained nurse, shall be compelled to disclose any information which he may have acquired from his patient while attending him in a professional character and which information was necessary to enable him to prescribe as a physician or to act for him as a surgeon or a trained nurse.' . . . By virtue of the statute the patient is alone given the right to remove the ban of secrecy. The patient may be willing to waive the objection of incompetency as to a particular physician in whom he reposes confidence, and yet be unwilling to waive this objection as to another, who treated him at a different time for the trouble complained of. The statute affords him this privilege, when the testimony of the offered witness does not relate to the same occasion as that from which the patient has removed the seal of secrecy. (Citing cases.)

"Counsel for the defendant upon cross-examination of plaintiff asked her if the physicians whom defendant desired to introduce as witnesses as to her condition prior to the alleged injury had not treated her in 1907 for displacement of the womb. This she denied, and it is now urged by the defendant that it was entitled to have the benefit of these physicians' testimony in order to contradict the plaintiff. But, if the defendant's position in this respect should be upheld, then the above statute in regard to privileged communications would be easily evaded. In any cause where the opposing party desired to obtain the testimony of an attending physician, it could be secured in like manner, although against the objection of the patient. The plain provisions of the statute forbidding such testimony by a physician cannot thus be abrogated. (*Holloway* v. *Kansas City,* 184 Mo. 19, [82

S. W. 89] ; *Burgess* v. *Sims Drug Co.,* 114 Iowa, 275, [89 Am.
St. Rep. 359, 54 L. R. A. 364, 86 N. W. 307].) We are
therefore of the opinion that the plaintiff, by the introduction
of the testimony of Dr. Fowler relative to his treatment of her
as a physician after the injury, did not waive her privilege
to object to the testimony of other physicians who had
treated her prior to that time, although for the same alleged
trouble.'' (See, also, *Butler* v. *Manhattan Ry. Co.,* 3' Misc.
Rep. 453, [23 N. Y. Supp. 163] ; *Marx* v. *Manhattan Ry. Co.,*
56 Hun, 575, [10 N. Y. Supp. 159] ; *Treanor* v. *Manhattan
Ry. Co.,* 16 N. Y. Supp. 536; *Webb* v. *Metropolitan St. Ry.
Co.,* 89 Mo. App. 604; *Woods* v. *Incorporated Town of Lisbon,*
150 Iowa, 433, [130 N. W. 372].)

The case of *Holloway* v. *Kansas City,* 184 Mo. 19, [82
S. W. 89], decided by the supreme court of Missouri, states
with equal force and lucidity the law applicable to this ques-
tion. Action was brought there for the recovery of damages
for personal injuries alleged to have been caused to the
plaintiff by falling through a hole in a defective sidewalk.
A point similar to the one last discussed was there raised
on appeal. In the course of its opinion the court said:

''The plaintiff testified upon her examination in chief that
her general health was good, and upon cross-examination she
was asked if Dr. Mathias had treated her, and what for. She
replied that he had treated her for headaches; nothing else.
Defendant thereafter introduced Dr. Mathias to show what he
had treated her for. Now defendant contends that, because
plaintiff answered its questions to the effect that Dr. Mathias
treated her for nothing else than headaches, she waived the
protection of the statute, and that the defendant had the
right to the evidence of Dr. Mathias for the purpose of con-
tradicting her. If defendant's position in this respect be the
law, then the statute in regard to privileged communications
is a failure in the purpose for which it was intended, for a
party to a suit could evade it at any time where an attendant
physician is introduced as an expert witness by asking him
upon cross-examination, if he had treated the party in whose
behalf he testifies, if he treated such party for anything else
than what may be stated by such party, and, if so, by this
means contradict him. The statutes of Iowa and New York
with respect to privileged communications are in all essentials
like the Missouri statute, and in the former state, in the case

of *Burgess* v. *Sims Drug Co.*, 114 Iowa, 275, [89 Am. St. Rep. 359, 54 L. R. A. 364, 86 N. W. 307], the facts were similar to the facts in the case at bar. In that case defendant asked plaintiff on cross-examination if a certain physician, viz., Dr. Amos, had treated him, and what the doctor had treated him for. Plaintiff answered the questions without objection, and then defendant offered Dr. Amos as a witness, claiming that plaintiff had waived his right under the statute by answering the questions propounded him by the defendant. The court held that plaintiff had not thereby waived his privilege under the statute, and that Dr. Amos was not competent to testify in regard to plaintiff's ailments, or his treatment of him. The court says: 'If counsel saw fit on cross-examination to inquire into this matter, he must be bound by the answer, and cannot afterward claim that the witness, by answering without objection, voluntarily waived the privilege.' The same rule is announced by the supreme court of New York in *Fox* v. *Union Turnpike Co., supra*, [59 App. Div. 363, 69 N. Y. Supp. 553]. There was no error in the ruling of the court upon this question."

[1] In our opinion the rule applicable to this case is correctly stated in the foregoing authorities. We have found no authority that supports the contention of appellant that because the plaintiff and her physician testified fully as to her condition after the assault the ban of privilege was thereby waived as to information acquired by Dr. Marvel while acting as her physician several years prior to the injury complained of.

We shall next consider the further contention of appellant that the plaintiff testified that Dr. Marvel was not her physician, and that he never treated her for any disease except lumbago. Preliminarily, it is proper to point out that the appellant is not accurate in stating the effect of the testimony of the plaintiff. She did not testify that Dr. Marvel was never her physician. The record plainly shows to the contrary. The purport of her cross-examination was whether in the years 1902, 1904, and 1907, Dr. Marvel did not treat her for female trouble. The questions were so framed that an affirmative answer would carry the declaration either that he had or had not been her physician for *the specified purpose*. She invariably answered that he had never so treated her, but that he had been called in to treat her for an attack of

lumbago. This was equivalent to a direct declaration that he never had been her physician for the treatment of female trouble, but that he had been her physician for the treatment of lumbago. It was not disputed at the trial that Dr. Marvel had been the plaintiff's physician; the sole dispute was whether he had treated her for female trouble or for lumbago. Moreover, the fact of the relationship of physician and patient was admitted by counsel for the defendant at the trial, and it was upon this admission that the court based its ruling excluding the deposition, as is shown by the record:

"Mr. Gilbert: [Counsel for the defendant.] Let the record show that the entire deposition of Dr. Marvel was offered.

"The Court: That is on the understanding that what he would testify to was information gained while attending her as a physician?

"Mr. Gilbert: Yes.

"The Court: With that understanding the objection will be sustained."

The argument of appellant, therefore, that plaintiff, having denied that Dr. Marvel had been her physician, could not object to his testifying in the case is without force.

In view of this stipulation, and because we do not find that the point has been made in the briefs, it is not necessary to consider the question whether the privilege may be allowed as to information claimed by the defendant to have been acquired by Dr. Marvel in the treatment of the plaintiff for female trouble in the face of her testimony that he attended her for the treatment of lumbago only.

It is unquestionably true that the testimony of Dr. Marvel, if competent, would have been material and relevant to the inquiry whether the pelvic condition of the plaintiff as testified to by herself, Dr. Tyrola, and the other physicians at the trial, was in any degree due to the assault. No authority has been brought to our attention by counsel and we have not been able to find any which would support the admission of the deposition under the circumstances presented by the record.

And although the tendency of the decisions in recent years has been toward a less liberal application of the ban of privilege, and that the privilege in this state in cases of damages for personal injuries has been abrogated since this cause of action arose (Stats. 1917, p. 954), yet to hold that the depo-

sition was admissible would be to deny to the plaintiff a substantial right. The ruling was proper.

For the reasons stated the judgment and order are affirmed.

Shaw, J., Lennon, J., Melvin, J., Olney, J., and Angellotti, C. J., concurred.